Murray, Respondent, vs. Yellow Cab Company, Appellant.

*March 9—April 3, 1923.*

*Automobiles: Negligence: Injury to pedestrian: Excessive speed: Breaking of part of automobile causing loss of control: Proximate cause: Instructions: Excessive damages.*

1. Where the evidence showed that the defendant's taxicab was driven at an unlawful rate of speed over a city street, and that, due to crystallization, the spindle pin which engaged the left front wheel broke and the wheel fell off, as a result of which the driver lost control of the cab, which ran onto the sidewalk and injured the plaintiff, this court is not disposed to hold as a matter of law that the negligence of the driver did not constitute a proximate cause of the injury to the plaintiff, as the driver should have anticipated that some part of the

car might give way causing loss of control, and that, particularly in a city, the serious consequences resulting from such loss of control are augmented by a higher rate of speed.

2. The refusal to submit in the special verdict a question as to whether plaintiff was injured at the time in question as the result of a mere accident was not error where the court, in instructing as to special issues submitted, told the jury that they must find for defendant if plaintiff's injuries were the result of unavoidable accident.

3. Where plaintiff, aged fifty-two years and earning $27 a week, had both his legs broken, and as a result one leg was two inches shorter than the other and his earning capacity was reduced by something like $60 a month, an award of $7,000 damages was not excessive.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

Personal injury. While plaintiff was standing on the northwest corner of a street intersection in the city of Milwaukee the left front wheel of the defendant's cab, coming from the north, fell off, the driver lost control of the cab, which ran upon and across the sidewalk where plaintiff was standing, striking the plaintiff and inflicting personal injuries. This action was brought to recover the damages sustained.

By special verdict it was found (1) that the taxicab was operated at a rate of speed in excess of fifteen miles per hour as it approached the place where the collision with plaintiff occurred; (2) that the operation of the taxicab at such a rate of speed was a proximate cause of the collision; (3) that the taxicab driver failed to exercise ordinary care in the operation of the taxicab as it approached the place where the collision with plaintiff occurred; (4) that such failure was a proximate cause of the collision with plaintiff; (5) that plaintiff was not guilty of a want of ordinary care which proximately contributed to produce his injuries; and (6) damages $7,000.

From a judgment entered on this verdict the defendant appeals.

For the appellant there was a brief by *Cannon, Bancroft & Waldron* of Milwaukee, and oral argument by *L. H. Bancroft.*

For the respondent there was a brief by *Churchill, Bennett & Churchill* of Milwaukee, and oral argument by *W. H. Churchill.*

OWEN, J.    Appellant contends that the collision was the result of a breaking of the spindle pin which engaged the left front wheel, keeping it in place on the automobile, which breaking caused the wheel to fall off, as a result of which the driver lost control of the cab without fault or negligence on his part.    It is contended that as the cab was equipped with a Timkin axle, a type commonly used by the best automobiles, and that the breaking resulted from crystallization which could not have been discovered by any test or examination to which the cab or the axle might have been subjected, the breaking of the spindle pin was the proximate cause of the collision, and that the injury was the result of an unavoidable accident, without negligence on the part of the defendant.

The case was not tried or submitted to the jury on the theory that there was any negligence on the part of the defendant company in its failure to discover the crystallized condition of the broken part of the automobile.    The negligence found by the jury was the excessive speed, and negligent operation and management, of the car at the time of the collision.    An unlawful rate of speed was abundantly proved. One witness testified that the automobile was going fast; another, that it was going very fast; and still another, that it was running at about thirty miles per hour.    When the wheel broke off it buckled under the axle flatwise on the ground and remained in that position until the cab was stopped.    The momentum of the cab carried it up over a six-inch curb across the sidewalk into Lake street, west of where plaintiff was standing, and it came to a stop about

seventy-five feet from the point in the street where the wheel broke off. There was evidence to show that the street upon which the cab was approaching was rough, and that just prior to the accident the driver was tugging at the steering wheel as though the left wheel of the car was in the groove between the street-car rail and the adjacent pavement.

The question requiring consideration is whether such excessive rate of speed and such negligent management of the automobile can be said to be the proximate cause of the injury. It may be conceded that the accident would not have occurred in the absence of the breaking of the spindle pin. If so, was there any causal relation between the excessive rate of speed and the collision with plaintiff? Should the driver of the cab have anticipated that injury might probably result to others from the manner in which he managed and operated the same? The rate of speed is limited by law to fifteen miles an hour within city limits. On country highways a speed of thirty miles per hour is permitted. A car driven at twenty-five miles an hour, say, on a country highway is just as likely to lose a wheel as if driven at the same rate of speed on a city street. If while being driven at twenty-five miles an hour on a country highway a wheel came off and the car struck and injured some person, it is doubtful whether negligence of the driver could be predicated upon such rate of speed; and if the car is likely to perform in much the same manner when the wheel comes off when driven on a country highway as on a city street, can there be said to be a causal relation between the rate of speed and the injury in the one case and not in the other? While the wheel is as likely to fall off in the one case as in the other, there is a considerable difference in the resulting hazard to the safety of persons. Pedestrians are more prevalent upon city streets than upon country highways, and while the chances that some part of the car may break are the same in both instances, the consequences to be anticipated from such a happening are by no means equal, and the loss of control

attending the breaking of some part of a car is far more serious on a city street than on a country highway. While the driver of a car has no more reason to anticipate the breaking of any of its parts while driving at a given rate of speed on a city street than while driving at the same rate of speed on a country highway, he should anticipate that such an event will result far more disastrously on a city street than on a country highway, and this affords one very substantial reason for the greater limitation of the rate of speed placed on the operation of automobiles in the city. A driver of an automobile should anticipate that some part of the car may give way at any moment, causing a loss of control, and that the serious consequences resulting from such a loss of control are augmented by a high rate of speed. The jury might well have found that if the car had been going at a lawful rate of speed when the wheel came off the injury would not have occurred, in which case the excessive rate of speed would be the proximate cause of the injury. We are not disposed to hold as a matter of law that the negligence of the driver of the cab did not constitute a proximate cause of plaintiff's injury.

Error is assigned because the court refused to submit the following question to the jury: Was the plaintiff injured at the time in question as the result of a mere accident? The court instructed the jury as follows:

"In connection with questions 2 and 4 you are instructed that in order to answer those questions or either of them 'Yes,' you must be satisfied that the collision was not the result of an unavoidable accident, and you will understand that the burden of proof is upon the plaintiff to satisfy you to a reasonable certainty by a preponderance of the credible evidence that the collision did not result from an unavoidable accident. If you are not so satisfied, you must answer such of those questions 2 and 4 as to which you are not so satisfied 'No.'"

The court then defined an unavoidable accident, to which no exception was taken. It will thus be seen that, while the

court did not submit the specific question requested by defendant, in view of the instruction given the jury could not have answered questions 2 and 4 as it did if the injuries were the result of an unavoidable accident. The instruction gave to the defendant the benefit of the principle of law upon which it relied and constituted a proper submission of the issues to the jury. *Linden v. Miller,* 172 Wis. 20, 177 N. W. 909.

That the damages are excessive is mildly suggested in appellant's brief. The jury awarded $7,000 damages. The plaintiff is fifty-two years of age. At the time of the accident he was earning $27 a week. Both of his legs were broken. He was confined to the hospital for over three months. After leaving the hospital he was obliged to use crutches and a cane for another three months. He suffered great pain. One leg is two inches shorter than the other. He is physically unable to do the work which he was accustomed to perform prior to the accident. He testified at the time of trial that his left leg swelled every morning and that he could walk with great difficulty; that lifting anything heavy hurt his legs, and that he cannot carry anything and walk with it at all; that he cannot run at all; that one leg is stiff at the knee and the other swollen, and that he can bend one knee very slightly. There was medical testimony to the effect that while the surgeons set the fractures as well as they could, the result "does not show very good reduction; this bone was not gotten back into exactly the position that it formerly was. The fragments apparently lack a half inch of getting together the way they were. The break was a slanting break and the bone was about half an inch out of alignment; the right leg is shorter than the other, due to the overriding of fragments; one part of the fractured bone slides down over the other; one fracture was a comminuted fracture; one bone was broken in more than one place; the two breaks in that bone were approximately an inch apart." Subsequent to the accident plaintiff has been able to earn but

$12 a month and board. It would seem that the reduction of his earning capacity as a result of the injury is something like $60 per month. The amount awarded by the jury would not purchase a life annuity of $60 a month. We are unable to say that the damages are excessive.

*By the Court.*—Judgment affirmed.