# Wytheville

## L. BROMM BAKING COMPANY, INC. v. ADA V. WEST, ADM'X, ETC.

June 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Aubrey R. Bowles, Jr., A. Scott Anderson* and *Willis D. Miller,* for the plaintiff in error.

*Thomas A. Williams, L. C. O'Connor* and *John Cogbill,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This action was brought by Ada V. West, administratrix of Eugene W. West, deceased, to recover damages for the wrongful death of said decedent, alleged to have been caused by the negligent operation of a truck owned by L. Bromm Baking Company. The jury rendered a verdict in favor of the plaintiff below in the sum of $5,000, and the case is now before us on a writ of error to the judgment on said verdict.

The accident involved occurred on the afternoon of September 19, 1934, at a point on the Richmond-Petersburg Pike, said to be known as Bellwood. Between Richmond and Bellwood the Pike which runs north and south is a double-drive highway consisting of two paved lanes, each eighteen feet wide, separated by a space on which is laid the track of an interurban electric line, each lane

being designated for one-way traffic. From Bellwood south to Petersburg, the Pike consists of a single wide pavement marked off into three traffic lanes.

At the time of the accident the deceased, assisted by one Dayton Shorter, was engaged in erecting a fence in front of West's home, which is situated on the eastern side of the highway where the single pavement and double driveway join, fronting thereon for a distance of sixty-four and one-half feet. About 450 feet south of the south boundary of the West property is located an overhead bridge crossing the tracks of the Seaboard Air Line Railway. There is a grade leading up to this bridge at both the northern and southern extremities, the grade downward from the northern end in the direction of Richmond, being three per cent. The defendant's truck which was being operated by its employee, G. M. Duncan, came down this grade, ran off the wide single paved portion of the highway, and struck the deceased and Shorter, killing both men. The wheels of the truck left a clearly defined impression in the soft dirt after leaving the concrete, which showed that it ran in a straight line from that point a distance of ninety-nine feet to where the deceased was killed, then straight on for nearly twenty-two feet to an oak tree, where it turned to the left across the northbound lane of the double driveway and was finally brought to a stop just before it reached the car track in the middle of the double paved lanes above mentioned. The body of Shorter was found resting against the oak tree twenty-two feet north of the place where the men were working, and the body of West was lying prone on the ground at Shorter's feet.

Some question is raised in the argument as to the exact spot at which West and Shorter were standing at the time of the impact, but it seems conceded that they were working at or near a posthole located at the extreme northwest corner of the West property, and thirteen and one-half feet from the eastern edge of the concrete pavement of the Pike. There is also some contention as to whether

or not the men were standing on West's private property or outside of the line next to the highway, but the jury would have been justified in inferring from the evidence that they were at the time on West's private property.

The only evidence given in explanation of the accident was that of the defendant's witnesses. According to this evidence, Duncan was proceeding northwardly towards Richmond at a speed of thirty-five miles an hour. He had been following a large meat truck operated by E. F. Hughes and C. H. Rice, driver and owner respectively, until he reached the crest of the elevation over the railroad tracks when he turned out of his line of travel and proceeded to pass the Rice truck, which was traveling at thirty miles per hour. While executing this movement a car came out of the southbound single traffic lane headed south towards Petersburg, which swerved so far to its left that in order to avoid a collision, Duncan turned his truck suddenly to the right, and then back to the left in an attempt to straighten it out again. When he did this Duncan's nephew and helper, who was riding on the seat with him, lost his balance and began to fall out of the truck on the right. Duncan grabbed for him at first with his right hand, and then with both hands. The boy, nevertheless, fell out of the truck on the dirt shoulder, suffering a broken foot. It was testified by Duncan that when he grabbed for his nephew he momentarily lost his own balance and control of the truck and did not see West and Shorter until it was too late to avoid striking them.

It is contended by the plaintiff in error that the court erred in refusing to sustain its motion to strike the evidence and set aside the verdict of the jury and enter judgment for the defendant on the ground that it was entitled to a judgment in its favor as a matter of law because plaintiff failed to prove any act of negligence on the part of the driver of defendant's truck and there is, therefore, no evidence to sustain the verdict of the jury.

It is well settled in Virginia, and generally held, that when an automobile leaves the public driveway and

injures a pedestrian on the sidewalk, the fact itself creates a presumption of negligence and casts upon the defendant the burden of showing that there was no negligence. *Trauerman* v. *Oliver's Adm'r,* 125 Va. 458, 99 S. E. 647; *Sisson* v. *Anderson,* 165 Va. 629, 183 S. E. 431. It is true that in the instant case the deceased was not on a sidewalk, but he was working on his private property more than thirteen feet from the paved portion of the highway, in a place where he had a right to assume he was safe and which the defendant was not supposed to travel. Under these circumstances, we think the rule applied in the sidewalk cases is equally applicable here.

It is argued, however, that the defendant's evidence affirmatively shows that the accident was not due to any act of negligence on the part of Duncan, but to a series of emergencies over which he had no control, created by the negligence of the driver of the southbound automobile in swinging too far to the left.

According to Duncan's own testimony, he undertook to pass the large meat truck going down hill, and as he was nearing the point at which southbound traffic from the double-drive highway enters the single roadway upon which he was traveling, obviously a place of potential danger; and although the roadway was clear and straight with an unobstructed view ahead for a long distance, he claims not to have seen this southbound automobile until it was only eight or ten feet from him, and that he did not see the two men who were killed until his truck was almost upon them. It also appears that while the speed of defendant's truck was set by a governor for a maximum of thirty-five miles per hour, going down grade as Duncan did in passing Rice's truck, the speed of his truck was not controlled by the governor, but it went down the hill at a high rate of speed, and that Duncan made no effort to apply his brakes until just before he brought the truck to a stop near the car track as above stated, over 150 feet from the place it went off the concrete on the dirt shoulder.

■ Under these circumstances, the jury might reasonably have found that the series of events which caused Duncan to run off the pavement and kill the deceased without making any effort to avoid the impact, which he claims were uncontrollable emergencies, were the result of his own negligence in passing the Rice truck at the time, place and in the manner he did, and that such negligence was, therefore, the sole proximate cause of the accident. *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545. In other words, considering all the circumstances, we think the question of whether there was any negligence on the part of Duncan which proximately contributed to the accident was a question for the jury and not a question of law for the court, and their verdict which has been approved by the trial judge is, therefore, conclusive.

It is next contended that the court erred in granting the four instructions which were given for the plaintiff. Instructions 1, 2, and 3 are objected to upon the sole ground that there is no evidence upon which to base them, which presents virtually the same question involved in the motions to strike the evidence and to set aside the verdict of the jury. As already stated, the question of whether or not the defendant was guilty of any negligence which proximately contributed to the accident were questions for the jury to decide under the circumstances, and we deem further discussion of the question unnecessary.

■ Instruction No. 4 is objected to on the ground that it tells the jury to estimate the damage with reference to the probability of life of the deceased, though neither his earning power, nor financial worth to his family was shown. It is further objected to on the ground that the jury were told that they also could take into consideration compensation for the loss of the care, attention, and society of the deceased to his widow and children and grandchildren, and allow such sum as they may deem fair and just by way of solace and comfort to his widow and children and grandchildren for the sorrow and mental anguish occasioned them by his death; and the jury might

also apportion the sum of their verdict for damages, if any, between the widow and children and grandchildren of the deceased. The evidence shows the age of the deceased, and also his expectation of life, and the verdict of the jury gave the entire amount of damages to the widow of the deceased. We, therefore, find no prejudicial error in this instruction. In addition to the four instructions given for the plaintiff, the court gave seven instructions for the defendant, which fairly covered every phase of the defendant's theory of the case.

Upon consideration of the whole case, we are of the opinion that the judgment of the trial court should be affirmed.

*Affirmed.*