# Richmond

INTERSTATE VENEER COMPANY, INCORPORATED, A CORPORATION, AND JAMES VAUGHAN v. I. W. EDWARDS, ADM'R OF THE ESTATE OF I. W. EDWARDS, JR., DECEASED.

June 19, 1950.

Record No. 3671.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*William G. Maupin* and *J. Edward Moyler*, for the plaintiffs in error.

*James T. Gillette* and *Junius W. Pulley*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

1. W. Edwards, Jr., died as a result of injuries received when the car he was driving was struck by a truck owned by Interstate Veneer Company, Inc., and driven by its agent, James Vaughan. The administrator of Edwards brought this action against Interstate and Vaughan, charging that the death of Edwards was caused by the negligence of Vaughan in failing to keep a proper lookout and in driving his truck at great speed on his left-hand side of the road. The jury returned a verdict for the plaintiff in the sum of $15,000, upon which the trial court entered judgment.

[1] There are two assignments of error. We need not be concerned with the first, which is to the overruling of defendants' motion to strike, made at the conclusion of plaintiff's evidence. By thereafter introducing their own evidence defendants waived the right to rely upon their motion and the entire record is now to be considered. *Spangler* v. *Commonwealth*, 188 Va. 436, 438, 50 S. E. (2d) 265, 266.

The second assignment brings in question the sufficiency of the evidence to support the verdict. The defendants contend that the accident was due to a failure of the steering mechanism of the truck, and not to any negligence of the driver, Vaughan. It is conceded that there was no negligence on the part of Edwards, the deceased.

The accident happened at about 6:45 a. m., October 22, 1947, on a straight stretch of Route 58 between Emporia and Courtland, in Southampton county. The hard surface was 18 feet wide, practically level but a little higher in the center, and bordered by gravel shoulders five or six feet wide. The shoulder on the truck's side was almost level with, but a little below, the hard surface, making a slight decline. The road was dry and the weather clear.

Edwards, alone in a 1937 model Ford, was driving east

at 35 or 40 miles an hour. Vaughan was going west, driving a 1947 Chevrolet tractor-truck with semi-trailer, used for hauling logs. A man named Seaborn was riding with him. As the truck reached a point about 75 feet from the Edwards car, it cut diagonally across the road to ·its left and struck the Edwards car. Edwards had apparently recognized danger as the truck approached and at some distance back he had pulled to his right until he was either entirely off the hard surface or his left wheels were barely on it. His car was struck on its left side, knocked back six or seven feet into the ditch and stopped against a small embankment with the front of the truck jammed against it. The car was practically demolished and Edwards died a few hours later from his injuries. Vaughan and Seaborn were not hurt.

There was evidence from which the jury could conclude that Vaughan was driving the truck at excessive speed. Plaintiff's witness, Moore, testified that the truck was running around 60 miles an hour when he passed it about three-fourths of a mile from the accident. Plaintiff's witness, Lee, testified it was going about 60 miles an hour when it passed him as he was standing beside the road 400 yards from the place of collision. Moore's evidence was objected to on the ground that the speed of the truck some distance down the road did not necessarily prove that it was going at that speed at the time of the accident. That is, of course, true, and we held in *Grinstead* v. *Mayhew*, 167 Va. 19, 23, 187 S. E. 515, 517, that excessive speed a mile and a quarter from the place of accident was not, of itself, sufficient in that case to warrant an inference of excessive speed at the time of the accident. But whether such evidence has probative value is usually within the sound discretion of the trial court, depending on distance from the scene of accident and possibly other factors. *Slate* v. *Saul*, 185 Va. 700, 708, 40 S. E. (2d) 171, 174. It was admissible here and its probative value was aided by the testimony of Lee, unobjected to, that it was maintain-

ing that speed when only 400 yards from the point of collision.

Nor does that evidence stand alone on the question of speed. It finds support in the physical facts, which may be, and in this case were, mute evidence of high speed. *Davis* v. *Webb*, 189 Va. 80, 85, 52 S. E. (2d) 141, 143, and cases there cited.

The Edwards car had stopped or practically stopped when it was struck. Just before the truck cut across to its left it had run for 33 feet with its right wheels off the hard surface and on the shoulder. From the point where it came back on the hard surface it skidded on the dry road a distance of 75 feet before striking the Edwards car. Yet it struck with such force that it reduced the Edwards car to a mass of wreckage and practically demolished the front of the truck, knocking the front part back over the wheels and leaving the wheels clear out from under the truck. A second trip was made by the garage people to bring the front wheels in.

Defendants' evidence was that the truck, which was empty save for its two occupants, was running at 35 or 40 miles an hour. There was evidence for the plaintiff that at that speed it could have been stopped in 35 or 40 feet.

Clearly there was sufficient evidence to support the charge that Vaughan was driving the truck at a speed prohibited by law (Code, 1950, sec. 46-212), and was therefore negligent.

At the time of the collision the deceased was on his side of the road—in fact, nearly or entirely off the hard surface on his side, evidently trying to escape what he saw was threatened. Admittedly the accident occurred without any fault of his. It was the duty of Vaughan to drive his truck on his right-hand side of the road (Code, 1950, sec. 46-220). Failure to do so was negligence. *Smith* v. *Turner*, 178 Va. 172, 16 S. E. (2d) 370, 136 A. L. R. 1251; *Sheckler* v. *Anderson*, 182 Va. 701, 29 S. E. (2d) 867. He did not drive it on his side, but it came

across to its extreme left and there collided with the car of Edwards, causing his death. Such movement of his truck was evidence of negligence sufficient to make a *prima facie* case for the plaintiff and to cast upon the defendants the burden of producing evidence in explanation.

In *Driver* v. *Brooks*, 176 Va. 317, 328, 10 S. E. (2d) 887, 892, the plaintiff was riding in a car being properly driven on her right-hand side of the road when suddenly and unexpectedly a car driven by defendant Johnson came from its right-hand side of the road, across the highway to its left and violently collided with the car occupied by the plaintiff. It was there said:

"In the instant case, the irregular movements of Johnson's car were undeniably the sole cause of the collision. These movements fully evidenced negligent action on the part of Johnson, unless it were shown that a sudden unforeseen illness caused him to lose control of the car. The burden of such proof, in explanation of his conduct, rested upon the defendants. The evidence in that connection is of doubtful and inconclusive character."

In *Bizzaro* v. *Payne*, 4 Cir., 169 F. (2d) 851, 852, on a four-lane highway with double white lines in the middle, the defendant's car went into a skid, crossed the entire four lanes and struck plaintiffs' car. The court there said: "The Virginia statute forbids driving to the left of two adjacent solid lines marking double traffic lanes on a highway. Therefore, one whose car is to the left of such lines has a burden of explanation."

In *Virginia Transit Co.* v. *Durham*, 190 Va. 979, 59 S. E. (2d) 58, a case in which plaintiff, while walking on a sidewalk, was struck by a bus, we said:

"Having proved that the bus was under defendant's exclusive control and that it entered upon the sidewalk and inflicted injury, the production of evidence that its entry upon that forbidden area was without negligence on its part was thus cast and imposed upon defendant."

See also, *Trauerman* v. *Oliver*, 125 Va. 458, 462, 99 S. E. 647, 648; *L. Bromm Baking Co.* v. *West*, 166 Va. 357, 360-1, 186 S. E. 289, 290; *Coerver* v. *Haab*, 23 Wash. (2d) 481, 161 P. (2d) 194, 161 A. L. R. 909; *Weldon Tool Co.* v. *Kelley*, 81 Ohio App. 427, 76 N. E. (2d) 629; *Jolley* v. *Clemens*, 28 Cal. App. (2d) 55, 82 P. (2d) 51; *Anderson* v. *Freis*, 61 Cal. App. (2d) 159, 142 P. (2d) 330; *Consolidated, Gas, etc., Co.* v. *O'Neill*, 175 Md. 47, 200 A. 359.

When all the evidence was in, the ultimate burden remained on the plaintiff to prove his case; that is, to show by a preponderance of the evidence that the death of his intestate was caused by the negligence of the defendants. *Darden* v. *Murphy*, 176 Va. 511, 11 S. E. (2d) 579; *Virginia Transit Co.* v. *Durham, supra.* But when the plaintiff made out a *prima facie* case, as he did, the defendants were then under the necessity of explanation. Not just any sort of explanation will do. It must be a reasonable explanation, one which the jury can accept, tending to show that what happened was due to something other than defendants' negligence. It is sufficient if it outweighs the plaintiff's *prima facie* case, or if it leaves the ultimate question of defendants' negligence in equipoise. *Tidewater Stevedore Co.* v. *Lindsay*, 136 Va. 88, 95, 116 S. E. 377, 378; *Anderson* v. *Sisson*, 170 Va. 178, 185, 196 S. E. 688, 691. These are questions for the jury unless the evidence introduced in explanation is of such character that reasonable men may not differ as to its effect. *Edgerton* v. *Norfolk So. Bus Corp.*, 187 Va. 642, 653, 47 S. E. (2d) 409, 415.

The explanation offered by the defendants was that the accident was due to the breaking of the third arm ball, part of the steering mechanism, which resulted in the loss of steering control. This ball is at the end of a metal arm placed parallel with and attached to the left front wheel, fitting into a socket at the end of a rod called the drag length. These form part of the steering mechanism operated by the steering wheel. If the ball breaks, the steering

arm and the drag length fall apart and the wheels of the truck will not respond to the steering wheel.

Examination after the accident revealed that the steering ball was broken in two; that there had been an old crack in it, from one-half to two-thirds of the way through, in which was rust, while the balance of the break appeared to be new. This was a defect that the usual and ordinary inspection would not disclose, according to defendants' evidence, and negligence is not charged on that ground. It is not disputed that if the ball breaks while the truck is in motion the driver loses control of the steering.

James Vaughan, driver of the truck, was paralyzed after the accident and unable to appear as a witness. About an hour after the accident he told a State trooper, witness for the plaintiff, that he was running 35 or 40 miles an hour and he thought something happened to his steering, that he did not have any control of it and he applied his brakes.

The only other witnesses to the accident were two employees of the defendant company. One was Seaborn, with Vaughan in the truck. He testified that when they were right even with the Edwards car the truck "ducked" to the left and went straight across the road; that he was looking ahead, then happened to look at Vaughan, saw him turn the wheel, and "after he said he couldn't he mashed on the brakes," and tried to pull it back; that he saw the wheel go all the way around, but the truck kept going the same way. He first denied that Vaughan drove off the hard surface but later admitted he did; stating he did not know why and that he did that after the steering wheel got out of control. He also said that after Vaughan got off the hard surface and started to pull back, it was then that something got wrong with the steering.

The other witness was Henderson Powell, who was expecting to be picked up by the truck and was walking toward it. He testified that when the truck was about a quarter of a mile away he saw something hanging down

that looked like a rod; that when the truck was 285 feet from him "all at once it ducked across the road to the left." From the photographs he identified what he saw as the drag length. On cross-examination he stated that when he was at a point 285 feet from the accident he saw the rod fall down on the road and that was when the truck started cutting to the left; that a little before that the truck had gone off the hard surface to the right but he could not tell what the driver was trying to do at that time, and that the rod dropped down about the time he got back on the hard surface.

The jury necessarily found that the evidence so offered by the defendants was not sufficient to overbalance or leave in doubt the *prima facie* case made by the plaintiff that the collision was caused or contributed to by the negligence of Vaughan. We cannot say that reasonable men could not reach that conclusion from the evidence as a whole and the allowable inferences from it.

As to the break in the steering apparatus, the evidence presented two issues. One was whether the breaking of the steering ball was the cause or the result of the collision. The other was whether, if the breaking was a cause, the negligence of the driver was a contributory cause.

On the first, the statements of Vaughan were not conclusive that he lost control because of a break in the steering mechanism, not related to the speed of his driving. *Poole* v. *Kelley*, 162 Va. 279, 287, 173 S. E. 537, 540. Not only was the testimony of Seaborn contradictory within itself, but the State trooper testified that when he got to the wreck he asked Seaborn if he knew what happened and Seaborn said no, he did not know what happened; that "all he knew the truck got away from the man and they had an accident." There was evidence, undenied, that the drag length or rod, which Powell claimed he saw hanging down under the truck a quarter of a mile away, could not fall down at all unless the wheel was turned completely to the right. Even then only six inches of

it would be visible from the front. This rod was one-half inch in diameter in the middle and one inch at the end. The jury were within their province if they considered it incredible that Powell saw what he claimed to see as the truck rapidly approached him only a few minutes after sunrise on a shaded road. See *Randolph* v. *Commonwealth*, 190 Va. 256, 56 S. E. (2d) 226.

If the break occurred before the right wheels of the truck ran on to the shoulder, as might be inferred from Powell's evidence, or if they went off of the hard surface after the steering wheel got out of control, as Seaborn stated at one point in his testimony, the probabilities are that the truck would have continued to its right, because the shoulder was a little lower than the hard surface and sloped away from it. The jury could conclude that Vaughan lost control because of excessive speed when he turned back on to the hard surface, and not because his steering gear would not work. *Cf. Poole* v. *Kelley*, *supra*. He had evidently applied his brakes when on the shoulder because the skid marks made by his wheels began immediately at the edge of the hard surface.

The evidence shows, and common experience tells us, that such a break in the steering mechanism as that claimed by the defendants is a rare occurrence when a motor vehicle is running over practically a level road. When it is found broken after such an accident as this, the logical inference is that it broke in the accident. Mechanics introduced as witnesses by the defendants admitted this to be true.

The day before the accident, and for many days prior, this truck and trailer had been driven in the woods, over rutted, corduroy roads, loaded with logs. One of defendants' witnesses said he could not answer why the ball would not break under those conditions rather than on the hard-surface road. Another said it did not look like it was possible, but that the impact of the collision would probably break it. The third said there was not much force on the ball when the vehicle was in motion and that in running on

a hard-surfaced road there is nothing that should break the ball, "but the wheel must hit something that will throw an awful strain on it." Plaintiff's evidence was that there was every probability that it broke in the collision and not on the road. One of defendants' experts was of opinion that there would not be as much strain on the steering ball in driving on log roads as on the highway because "speed would have something to do with the jar you would get."

There was evidence for the plaintiff, referred to above, from which the jury could conclude that the speed of the truck prevented its being stopped by the brakes before it reached the Edwards car. If the negligence of the driver caused the break, or combined with it to produce the injury, the defendants are still liable. *Appalachian Power Co.* v. *Wilson*, 142 Va. 468, 129 S. E. 277; *Jefferson Hospital* v. *Van Lear*, 186 Va. 74, 41 S. E. (2d) 441; *Murray* v. *Yellow Cab Co.*, 180 Wis. 314, 192 N. W. 1021; *Bona* v. *S. R. Thomas Auto Co.*, 137 Ark. 217, 208 S. W. 306.

The issues involved questions of fact which were properly presented to the jury by instructions given without objection. Their verdict, approved by the trial court, is supported by credible evidence and fair inferences from it.

The judgment below is, therefore, affirmed; but the verdict and the final order having failed to ascertain the proportions in which the amount recovered shall be distributed (Code, 1950, sec. 8-638), the case is remanded for that purpose. *Hoffman* v. *Stuart*, 190 Va. 880, 886, 59 S. E. (2d) 94.

*Affirmed and remanded.*