## Staunton

ISHMAEL FLETCHER, ADMINISTRATOR OF THE ESTATE OF JAMES ED-
WARD BURCHETT, DECEASED v. GEORGE W. HORN AND
ERNEST THOMPSON.

September 14, 1955.

Record No. 4401.

Present, All the Justices.

The opinion states the case.

*S. H. & George C. Sutherland* and *W. A. Daugherty*, for the plaintiff in error.

*Combs, Combs & Street*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

This is an action for wrongful death by Ishmael Fletcher, administrator of the estate of James Edward Burchett, deceased, against George W. Horn and Ernest Thompson, arising out of a collision between a sedan driven by Tommie Daniel, in which Burchett was a passenger, and an empty logging truck owned by Horn and driven by his employee, Thompson. After all of the evidence had been heard by a jury the trial court struck the plaintiff's evidence on the ground that it failed to show that the death of the plaintiff's decedent was proximately caused by the negligence of the defendants or either of them. A verdict and judgment in favor of the defendants necessarily followed, and the only question submitted to us is whether the evidence was sufficient to go to the jury.

The collision occurred between 8:30 and 10:30 a. m. on September 22, 1953, on Highway No. 460, about eight miles west of Grundy in Buchanan county. The weather was clear and the pavement dry. At the scene of the collision the highway is straight, paved to a width of 18 feet and 6 inches, and runs slightly downgrade to the west along the Levisa river. On the northern side of the highway between the pavement and the riverbank is a dirt shoulder 12 to 15 feet wide. On the opposite or southern side of the road is a shallow ditch, beyond which is a steep hill or embankment.

At the time of the collision the sedan in which Burchett was riding was proceeding eastwardly, with the shallow ditch and hill on its right-hand side. The truck, going westwardly, had just

passed around a slight left-hand curve and was on a straight stretch of the road, with the wide shoulder and the river beyond on its right-hand side. As the result of the collision both vehicles came to rest on the southern, that is, the sedan's right and the truck's left, side of the highway. The sedan was upright but badly damaged on its left side by a glancing blow extending from the left front door toward the rear. "The back of the car was pushed up against the bank at about 45° angle with the road," as one witness said, or "the automobile was crushed in against the hill side off the road," as another described it. The truck with its left front end damaged by the impact, was turned over on its right, about 5 or 6 feet beyond or west of the sedan. The front end of the truck was toward the bank and its rear end extended partly across the pavement. Both vehicles immediately caught fire and were destroyed. Daniel, the driver of the sedan, and Burchett, the plaintiff's decedent, were burned to death. Raymond J. Burris, Jr., another passenger in the car, was badly burned but survived. Thompson, the driver and only occupant of the truck, suffered severe burns.

The principal witness for the plaintiff was H. R. Fink, a brakeman employed by the Norfolk & Western Railway Company, who was attending to his duties in the railroad yard located across the river from and north of the highway. Fink estimated that he was standing some 200 or 300 feet from the scene of the collision. He saw the truck come off the bridge just to the east of the point of impact, at what he described as "a terrific speed," or "a pretty fast speed," or "making pretty good time." Beyond this he was unable to estimate the speed of that vehicle. He likewise "got a glimpse of" the on-coming sedan and "heard the calamity." He made no mention of the speed of the sedan. Because, as he said, he was "looking sidewise of the road," he could not tell in what "part of the road" the collision occurred. He did not say what course the respective vehicles took after the impact, or how or where they stopped.

M. L. Duke, a State Trooper, who arrived at the scene about half an hour after the collision, described the highway at or near the scene and told of the location of the two vehicles involved. He said that he found no skid marks from either vehicle, and was unable to determine "the exact point of the impact." He found on the pavement a mark which ran eastwardly 25 feet from the front of the sedan. This looked "like a rim on a car had skidded along, but whether or

not it occurred that day I couldn't say. It might have occurred at an earlier date."

R. V. Venable, a passer-by, who came upon the scene shortly after the collision, agreed with the other witnesses as to the condition and location of the damaged vehicles. He found "some scars on the road" extending at a 35-degree angle from the westbound lane across the eastbound lane to the southern edge of the pavement. He was unable to say which if either of the vehicles made these marks. He saw no skid marks on the pavement.

Sidney Matney, a deputy sheriff, also noticed no skid marks. He observed a "little gash in the hard top" which he said was "on the left of the white line going down." He was unable to determine whether this mark was caused by one of the vehicles here involved.

This is all of the evidence offered by the plaintiff bearing on the manner and cause of the collision. Burris, the only surviving occupant of the sedan, while present in the courtroom, did not testify.

Thompson, the driver of the truck, testified that he came off of the bridge which he said was some 300 or 400 feet east of the place of the collision, driving at approximately 35 miles per hour. As he came around the slight left-hand curve he saw the on-coming sedan about 150 feet away. He did not state its speed, but said that as the two vehicles neared each other the sedan left its proper eastbound lane, crossed the center of the road, came into his (Thompson's) westbound lane, and drove partly onto the wide dirt shoulder which extended along the northern side of the road. Thinking that the driver of the sedan intended to park on the shoulder, Thompson slowed down and turned to the left in order to pass on the right-hand side of the on-coming car, whereupon the sedan suddenly headed back to its right and toward its proper eastbound lane. Seeing this change in course by the on-coming car, Thompson cut sharply to his right in the effort to get back into his proper westbound lane. But, as he said, the cars were then only about 25 feet apart and it was impossible for him to avoid the collision. The left front wheel of the truck struck the left front door of the sedan. Thompson was rendered unconscious by the impact and did not know what thereafter happened to the two vehicles, where they went, or where they stopped.

■ The burden of proof was, of course, on the plaintiff to prove that the driver of the truck was guilty of negligence which was a proximate cause of the collision. We agree with the trial

court that the plaintiff failed to carry this burden.

It is argued on behalf of the plaintiff that the testimony of Fink, the brakeman, was sufficient to warrant a finding that the driver of the truck was proceeding at an excessive rate of speed. It will be recalled that this witness described the speed of the truck, as it approached the scene of the collision, as "terrific," or "pretty fast," or "making pretty good time."

In the first place, it is doubtful that such indefinite and relative expressions are proof of excessive speed. See *Springs* v. *Virginia Railway & Power Co.*, 117 Va. 826, 830, 831, 86 S. E. 65; *Keen* v. *Harman*, 183 Va. 670, 674, 33 S. E. (2d) 197, 198. But aside from this, there is no proof that the speed of the truck was a proximate cause of the collision. There is no evidence that because of its speed the driver lost control of the truck. On the contrary, it clearly appears from his undisputed testimony that he had his vehicle under proper control until the impact.

■ Next, it is argued that the jury might have found that the truck driver was guilty of negligence in driving on the wrong side of the road and attempting to pass the on-coming sedan. In *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 60 S. E. (2d) 4, 23 A. L. R. (2d) 532, we held that the fact that a motor vehicle was being driven on the wrong side of the road, in violation of Code, § 46-220, "was evidence of negligence sufficient to make a *prima facie* case for the plaintiff and to cast upon the defendants the burden of producing evidence in explanation." (191 Va., at page 113, 60 S. E. (2d), at page 7.) "Not just any sort of explanation will do. It must be a reasonable explanation, one which the jury can accept, tending to show that what happened was due to something other than defendants' negligence. It is sufficient if it outweighs the plaintiff's *prima facie* case, or if it leaves the ultimate question of defendants' negligence in equipoise. * * * These are questions for the jury unless the evidence introduced in explanation is of such character that reasonable men may not differ as to its effect." (191 Va., at page 114, 60 S. E. (2d), at page 8.)

We are of opinion that the testimony of the defendant truck driver measures up to these requirements. His testimony is clear and not disputed. Certainly it is not incredible. He said that as the vehicles approached each other from a distance of 150 feet, the driver of the on-coming sedan left his proper side of the road, cut across the center line and into the westbound lane in which the

truck was properly traveling. At the speed at which the truck was traveling, and assuming that the sedan was proceeding at a reasonable rate of speed, it would have required only a couple of seconds for the vehicles to cover the intervening distance. In this situation, which was not created by the negligence of the truck driver, he had to decide instantly how he might avoid a collision. It is argued that he should have stopped, but there is no showing that he had sufficient time and space to do so, or that had he stopped the collision would have been averted, for the on-coming car was being driven in the truck's proper lane. He adopted the only alternative, which was to turn to the left and attempt to pass on the right side of the on-coming car. While he was undertaking this course, the driver of the sedan suddenly directed his vehicle sharply to the right in the effort to get back into his proper lane. The truck driver likewise cut to his right in the effort to avoid the collision. But as the latter said, the vehicles were then too close for him to avoid the collision.

It is argued on behalf of the plaintiff that the fact that the left front end of the truck struck the left front fender of the car, the fact that the truck "crushed the automobile up against the hillside," and the fact that both vehicles came to rest on the southern, or sedan's right-hand, side of the road contradict Thompson's story as to how the collision occurred. We do not agree. If, as Thompson said, just before the impact each vehicle was being directed sharply to its right in the effort to get into its proper lane, this would have brought the left front ends in contact. As has been said, no witness testified as to what happened after the impact, what course the respective vehicles then took, or how they happened to come to rest as they were afterwards found. Since the truck driver lost consciousness as a result of the impact, his vehicle was thereafter out of control.

It is a matter of common knowledge that a motor vehicle, out of control as the result of a collision, may seemingly defy all laws of physics. *Richter* v. *Seawell*, 183 Va. 379, 382, 32 S. E. (2d) 62, 63. The fact that it may come to rest on the left-hand side of the road is not indicative that the collision which caused the driver to lose control was due to his negligence. *Keen* v. *Harman, supra* (183 Va., at page 676, 33 S. E. (2d), at page 199.) See also, *Carr* v. *Patram*, 193 Va. 604, 610, 70 S. E. (2d) 308, 312, 313. Similarly, in the present case, the fact that the truck, out of control as a result of the

collision, may have driven the sedan against the hill is not indicative of the cause of the collision.

We find no error in the action of the trial court in striking the plaintiff's evidence, and the judgment is

*Affirmed.*

BUCHANAN and MILLER, JJ., dissenting.

MILLER, J., dissenting.

It is conceded that decedent Burchett, an occupant of the eastbound car driven by Tommie Daniel, was not guilty of contributory negligence.

The testimony of H. R. Fink was that Ernest Thompson was driving his truck at a high rate of speed as he left the bridge and approached the oncoming eastbound car. Other evidence shows that the collision happened on the south or left half of the highway as the truck proceeded westwardly, and that the vehicles came to rest against the bank on the south side of the road. The position and condition of the vehicles justify the conclusion that they collided while the truck was traveling at considerable speed.

The fact that the collision happened on the south or left side of the road as the truck traveled westwardly, raises a *prima facie* presumption of negligence on the part of the truck driver. *Interstate Veneer Co., Inc., et al. v. Edwards, Adm'r, etc.*, 191 Va. 107, 60 S. E. (2d) 4. The position and condition of the vehicles after the collision add evidential weight to the *prima facie* presumption.

Thompson gave the following explanation of what he did when he saw the oncoming automobile cross to his side of the road and how the accident happened:

"A. When I goes around this turn, I sees this car coming.

"Q. About how far was it from you?

"A. I guess maybe 150 feet, near that distance.

"Q. When you first saw it?

"A. And when I first saw it, and he come up the road, he commenced running kinda in this shape, coming across that white line.

\*     \*     \*     \*     \*     \*     \*

"Q. Tell what the car did.

"A. And it come on over here, when I saw him coming, he was

bearing to my side some and I put on my brakes and slowed down, didn't put on no brakes tight. I slowed down enough to let him get over there on my side on the dirt, off the hard-top, and when he done that, I just kinda laid over next to the white line, I released my brakes then I aimed to go on by him and he just give that thing a wring and come heading back across my lane, onto his lane where he started. My left front wheel hit his car near the left front door.

"Q. What did you do when you saw him cutting back to his side?

"A. I kinda wrung my truck then to try to get back to my side, but I was already too slow or he was too fast, but my left front wheel hit his car near left front door.

"Q. Where did your truck stop?

"A. The best I remember it was laying over the left side of the road, laying on right side."

The explanation given by Thompson as to why and how he and the driver of the automobile undertook to swap sides of the highway and then swap back again while continuing to approach each other at considerable speed is unconvincing and not such as to require its acceptance by the jury. His version is contradicted by the physical facts and raises a jury question as to whether or not the automobile was ever driven to his side of the road. It does not necessarily rebut the *prima facie* presumption of his negligence which arose because of his crossing the center line. But if it be true, as stated by Thompson, that Daniel drove near to the north shoulder of the road, yet the jury had the right to believe that when Thompson saw the car come over on his side of the road toward the north shoulder, he should have stopped or more materially reduced the speed of his truck before undertaking to pass on the left. It is to be remembered that he said he "* * * didn't put on no brakes tight."

Whether or not Thompson's explanation is factually true, and if so, then whether or not he should, under the circumstances, have driven to the left side of the road instead of trying to stop or more materially slow down his truck, were questions for the jury to decide and not for the court.

When all of the facts and circumstances are considered, whether or not Thompson was guilty of negligence that efficiently contributed to the collision was an issue to be decided by the jury.

BUCHANAN, J., joins in this dissent.