# Richmond

REGINA LEE BEDGET, AN INFANT, ETC. v. JAMES HARVEY LEWIN.

March 6, 1961.

Record No. 5204.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*T. Warren Messick*, for the plaintiff in error.

*J. Sloan Kuykendall* and *Thomas V. Monahan* (*Kuykendall & Whiting*, on brief), for the defendant in error.

Snead, J., delivered the opinion of the court.

Regina Lee Bedget, an infant, instituted an action by Virginia Lee Bedget, her mother and next friend, against James Harvey Lewin to recover damages for injuries she suffered while a guest passenger in a vehicle driven by her father, R. G. Bedget, which collided with an automobile operated by Lewin. A trial was had on April 21 and 22, 1959, and at the conclusion of the evidence plaintiff moved the court for summary judgment on the issue of negligence, which motion was overruled. The jury returned a verdict for defendant. Plaintiff's motion to set it aside was overruled and judgment was entered for defendant on January 4, 1960.

The collision occurred about 3 p.m., on February 15, 1958, on Route 55 approximately 1.3 miles west of the corporate limits of Front Royal. The highway runs east and west and the hard surface portion of it at the scene is 20 feet wide which is divided by double solid white lines. On each side there is a dirt shoulder 6 feet wide, a shallow drainage ditch and a bank. Looking east, the road is slightly downgrade, curves and slopes to the right. On the south side of the highway, a short distance west of the point of collision, there was a sign indicating the curve and stating the maximum safe speed to be 40 miles per hour.

Bedget was proceeding west in his jeep vehicle between 30 and 35 miles per hour and Lewin was driving east in his Pontiac automobile, equipped with snow tires, between 25 and 30 miles per hour. It was snowing at the time and the highway was covered with three inches of it, which obstructed a view of the white lines in the center of the road as well as the edges of the hard surface where the shoulders began. Lewin observed the Bedget vehicle approaching from around the curve and veered his automobile to the right. He said: "* * * I skidded to the right when I dropped off the shoulder of the road." The right wheels went up on the south bank about 18 inches and he steered his vehicle to the left. It continued to skid across the road

and struck the north bank. According to Lewin he had "no way to stop it." He estimated his speed at that time to be about 18 or 20 miles per hour. In the meantime Bedget, who was on his proper side of the road, applied his brakes, steered his vehicle to his right, and it struck the Lewin automobile on its right side at about the time the latter skidded into the north bank. Lewin said that after the accident he discovered there was ice under the snow.

Bedget testified defendant's vehicle traveled a distance of 132 feet after it struck the south bank before it collided with him on the shoulder of the north side of the road. The State trooper who investigated the accident estimated the distance to be between 90 and 110 feet. He also stated that Bedget told him at the hospital that defendant was not traveling at an excessive rate of speed.

The impact caused extensive damage to both vehicles. The motor of Bedget's jeep was knocked back 2.5 feet from the front of the frame. Defendant's car was damaged on its right side and the frame was bent. Plaintiff was thrown against the windshield and it was knocked out. She received multiple fractures of the facial bones and lost five of her front teeth. Later it was necessary to remove three others. Her injuries caused her to be hospitalized for several weeks.

Defendant did not contend in the trial court and he does not here contend that there was any contributory negligence on the part of plaintiff, or that Bedget was negligent in the operation of his vehicle. His position was there and is here that he did not negligently operate his automobile, and that the collision was unavoidable because of the snow and ice on the highway.

Plaintiff's assignments of error challenge the correctness of the court's rulings in refusing to enter summary judgment for plaintiff on the issue of negligence and submit to the jury the sole question of the quantum of damages; in refusing to set the verdict aside and award a new trial, and in the giving and refusing of certain instructions.

In support of her contention that defendant was negligent as a matter of law, plaintiff relies heavily upon defendant's testimony given on direct examination in explanation of why he was on the wrong side of the road when the collision occurred. It follows:

"Q. Now, Mr. Lewin, as you approached the scene where your vehicle was in collision with a vehicle owned by Mr. Bedget, will you state what occurred as you approached the Bedget vehicle?

"A. I saw this car coming—I didn't know Mr. Bedget, but I saw

this car coming and I beared over to my right, because at the time the road was covered with snow and you couldn't see the edges, and I just wanted to be sure that I was giving him plenty of room, and I skidded to the right when I dropped off the shoulder of the road. I hit the bank and ran up on the bank, two wheels up on the bank like that, and when I dropped it off I kept my foot off the gas and I dropped it off, but it just went—it hit—dropped down off there, it just skidded, went clear across the road. I had no way to stop it.

"Q. Did you make an effort to stop it?

"A. Well, I didn't know what to do. I didn't want to put the brakes on, and I kept my foot off the gas, but it still just skidded across there. I didn't—I took my foot off the gas when I was up on this bank, and then I—just didn't know any way to stop it. I fumbled, tried to get it into low, but I don't think I got it there. It is electric—automatic transmission."

Plaintiff argues that defendant negligently drove his car off the hard surface and shoulder of the road into a ditch where it, for the *first* time, skidded. She stated in her brief: "Lewin did not claim or for one instant contend that his automobile suddenly skidded on the hard surface or traveled portion of the highway. Neither did he claim or contend that it skidded while on the southern shoulder of the road."

Defendant testified on cross-examination:

"Q. Well, when you started up on the bank and got on the shoulder of the road, why didn't you stop your automobile?

"A. Well, I skidded and it led me up on the bank before I knew it, and I took my foot off the gas and just tried to drop it in-back in off the bank, you know, into the road slowly, and when I hit the road, it just kept skidding. I couldn't get it stopped.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Q. And you hit that bank, which is six feet off the road, is that right, sir?

"A. That's right; I skidded over on the east [south] bank.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Q. When you hit that bank that certainly slowed you down, and you weren't on any pavement, you were over on the shoulder of the road?

"A. It—I didn't hit the bank, you see. I skidded over against it and it led me right up on the bank.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Q. Well, did you have it under control when you ran off the right side of the road into the bank on the right side?

"A. It skidded again, then, in the first place, and it led me up on that bank, and then when I cut it off it skidded across the road."

The record shows that defendant demonstrated to the jury from a picture exhibit of the road the area where he started into a skid, but no mark was made thereon to indicate the point he designated.

Trooper H. F. Will testified: "I asked him [Lewin] why, for what reason he went off on his right side of the highway, and at the time he offered no explanation and could not give a reason for why he went off on the right side of the road. He stated that his vehicle just started to skid."

In *Crist* v. *Coach Company*, 196 Va. 642, 650, 85 S. E. 2d 213, we said: "* * * The skidding of an automobile is not negligence *per se*, but is a circumstance to be considered along with all the other evidence in determining whether negligence has been proved. *Jones* v. *Nugent*, 164 Va. 378, 180 S. E. 161; *James* v. *Von Schuckman*, 115 Conn. 490, 162 A. 3. See also the annotations in 126 A. L. R. 1084 and 113 A. L. R. 1002."

When a vehicle leaves its proper side of the road and proceeds on the opposite side in face of oncoming traffic and an accident ensues, such movement is evidence of negligence sufficient to make a *prima facie* case for the plaintiff. The burden then is cast upon defendant of producing evidence in reasonable explanation, one which the jury can accept, tending to show that the presence of the vehicle on the wrong side of the road was caused by something other than defendant's negligence. If such evidence outweighs plaintiff's *prima facie* case, or leaves the ultimate question of defendant's negligence in equipoise, it is sufficient. These are jury questions unless the evidence adduced in explanation is such that reasonable men may not differ as to its effect. When all of the evidence has been introduced, the ultimate burden rests upon plaintiff to prove by a preponderance of the evidence that his damages were caused by defendant's negligence. *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 113, 114, 60 S. E. 2d 4; *Fletcher, Adm'r* v. *Horn*, 197 Va. 317, 321, 89 S. E. 2d 89.

Here defendant is before us fortified with a jury verdict in his favor which has been approved by the trial court. That being the case all conflicts in the evidence and reasonable inferences from it must be resolved in defendant's favor. Upon a consideration of the evidence adduced we cannot say that defendant was negligent as a matter of law. It was a question for the jury to decide under proper

instructions and we hold that the trial court did not err in refusing to enter summary judgment for plaintiff on the issue of negligence.

We turn next to a consideration of the instructions given and refused. We observe that all instructions tendered by both plaintiff and defendant were disregarded and the court elected to draft and give instructions it prepared.

Instruction No. 1 is in the following language:

"The Court instructs the jury that the mere happening of accident in which a person is injured does not create any right in the plaintiff to recover a verdict. The burden is upon the plaintiff to *convince the jury* by the greater weight of the evidence that the defendant was guilty of negligence which constituted a proximate cause of the collision. The mere happening of the accident alone does not create a presumption of negligence unless under all the facts and circumstances of the case the plaintiff *convinces the jury* by the greater weight of the evidence that the defendant was *guilty of negligence*.

"The term 'greater weight of the evidence' means that evidence which is *most convincing to the jury* and includes all facts and circumstances of the case. The burden is upon the plaintiff to *convince the jury* by the greater weight of the evidence that it is more probable that the defendant was *guilty of negligence* which was a proximate cause of the collision than that the accident happened as a result of some other cause." (Italics supplied.)

Plaintiff objected to the instruction, among other reasons, because of the use of the words "convince" and "guilty". She maintains that the only burden that rests upon a plaintiff in tort cases is to prove the case by a preponderance of the evidence, that is, by the greater weight of the evidence, and that the requirement to "convince" the jury was tantamount to requiring the same degree of proof as is necessary in those cases where fraud is an issue.

The word "convince" is defined by dictionaries in various ways. Among them are "to satisfy by proof; to overpower; overcome; subdue; * * * to bring by argument to yield assent or to have belief beyond doubt." Webster's New International Dictionary, 2d Ed., Unabridged. In our jurisdiction the rule has long been established in tort cases that the burden is upon plaintiff to prove negligence on defendant's part by a preponderance of the evidence or the greater weight of the evidence. The repetition of the word "convince" and the resulting emphasis thus given to it could well have led the jury to the conclusion that something more than preponderance was required, and that plaintiff's burden was to generate belief beyond

doubt. The instruction as worded did not fairly state plaintiff's burden and it was error to give it in the terms used.

Plaintiff's contention that there is no burden upon her to prove defendant "guilty" of negligence because this is a civil case and the question of guilt or innocence is not involved is wholly without merit.

Instruction No. 3 reads:

"The Court instructs the jury that the law required the defendant to operate his vehicle on his right side of the center line of the highway in approaching the point of collision. A violation of this law constitutes negligence on his part.

"In this case the jury may assume, from the fact that he crossed to his left of the center line of the highway and struck the vehicle of the plaintiff, that he was guilty of negligence, unless upon consideration of all of the evidence in the case they are not convinced from the greater weight of evidence that the vehicle crossed the center line of the highway as a result of its negligent operation by the defendant."

This instruction does not correctly state the law of this case. In the second paragraph the jury were told they *"may assume*, from the fact that he [defendant] crossed to the left of the center line of the highway and struck the vehicle of the plaintiff, that he was guilty of negligence, unless * * *."* (Italics supplied.) It was not proper to tell the jury they "may assume" negligence on defendant's part. When defendant crossed to the left of the center of the highway it was evidence of negligence sufficient to make a *prima facie* case for plaintiff. The burden was then cast upon defendant to produce evidence in reasonable explanation to show that his vehicle was on the wrong side of the road by a cause other than his own negligence. If his explanation was reasonable and one which the jury could accept, then the ultimate burden rested upon plaintiff to prove by a preponderance of the evidence that her damages were caused by defendant's negligence. *Interstate Veneer Co.* v. *Edwards, supra.* The instruction should have explained the burden of proof in keeping with this established principle and it was error to give it as written.

We find no prejudicial error in instructions Nos. 2, 4, 5, 6 and 8, on the grounds of objection stated to the court below.

Instruction A, tendered by plaintiff, was properly refused. It would have told the jury that defendant was negligent as a matter of law in driving his vehicle on the wrong side of the road, and that if they believed such negligence was the proximate cause of the accident or

contributed to it, then they should find a verdict for plaintiff. The instruction, as written, runs counter to the principle of law set forth in *Interstate Veneer Co.* v. *Edwards, supra.* Instruction B. was not applicable to the facts in this case, and Instructions C. and D. were adequately covered in Instruction No. 2 given by the court.

For the errors with respect to Instructions 1 and 3 the judgment appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*