# Richmond

HARRIETT W. PULLEN v. ESTHER GROVES FAGAN.

October 14, 1963.

Record No. 5658.

Present, All the Justices.

The opinion states the case.

*William Goode* (*J. W. C. Johnson*, on brief), for the plaintiff in error.

*Paul A. Holstein* and *Roscoe B. Stephenson, Jr.*, for the defendant in error.

CARRICO, J., delivered the opinion of the court.

■ Esther Groves Fagan, the plaintiff, filed a motion for judgment against Harriett W. Pullen, the defendant, seeking to recover damages for personal injuries allegedly sustained when an automobile operated by the plaintiff was in a collision with one operated by the defendant.

There have been two jury trials of this action. The first trial resulted in a verdict in favor of the defendant but, upon the motion of the plaintiff, the trial court set aside the verdict and awarded a new trial, "limited solely to the quantum of damages which the plaintiff is entitled to recover of the defendant."

At the second trial, a verdict was rendered by the jury in favor of the plaintiff in the sum of $15,000.00. From the final order approving the second verdict, the defendant was granted a writ of error.

The sole question before us is whether the trial court erred in setting aside the first verdict. That being so, we will look only to the first trial and if the verdict there returned was improperly set aside, that verdict will be reinstated and all proceedings subsequent thereto will be annulled.

■ The evidence at the first trial showed that the accident occurred at 5:45 p.m., after dark, on November 6, 1961, on U. S. highway number 60 in Alleghany county, approximately thirteen miles east of Clifton Forge. The collision took place during a heavy rainfall on a sharp curve on the western slope of North mountain where the highway, paved with asphalt, was steep and winding.

The plaintiff, who was the public health officer for the counties of Alleghany, Bath and Highland, was travelling in an easterly direction up North mountain, en route from her office in Clifton Forge to her home in Lexington. The defendant, who resided in Newport News, was proceeding westerly down the mountain on her way to Clifton Forge.

The plaintiff testified that she proceeded up the mountain at a speed of 25 to 30 miles per hour and that as she approached the curve in question, which bore to her left, she observed, through the trees, the lights of an approaching vehicle. She dimmed her headlights and as she reached the curve she saw the defendant's vehicle, "dashing toward me in my lane." She said, "[t]here was no time to do anything." The two vehicles collided in the plaintiff's lane of travel.

The defendant testified that she was familiar with the highway and with the particular curve where the accident occurred because she had travelled from Newport News to Clifton Forge at least twice a year for eighteen years. She said that her automobile was in excellent mechanical shape and that her tires were in good condition.

The defendant further testified that she had proceeded about one-fourth of the way down the mountain when she approached the curve in question, which bore to her right. She stated that she was then travelling at a speed of 25 miles per hour and that as she prepared to enter the curve she applied her brakes, reducing her speed, "at least 5 or 6 miles an hour." She said that when she, "got into the swing of the curve" she felt the rear of her car begin to skid and she, "applied her brakes a little more" but could not keep the vehicle from skidding and it went, "sidewise and forward" across the road.

On cross-examination, the defendant testified that she told the investigating state trooper, on the night of the accident, that the only explanation she had for the accident was, "the weather, the rain." She stated that she told the trooper the next day that she might have skidded on some leaves on the highway because there were leaves, "ankle deep on the shoulder of the road" and, "there must have been some on the hard surface." When pressed to tell the jury what caused the accident, she candidly admitted that she was unable to do so, but insisted that, "she had not slipped before" and had, "no reason to know that I was going to slip on this curve." She further said that she might have slipped on a grease spot on the road because, "they tell me that's possible." When asked whether the accident could have been avoided had she been driving more slowly she replied, "it might have been avoided" but later added, "it's hardly possible."

The state trooper who investigated the accident testified that the road was wet and slippery; that a highway sign on the defendant's side of the curve indicated a maximum safe speed of 30 miles per hour; that the plaintiff's vehicle was damaged, "in the center of the front" and the defendant's vehicle on its right front, and that the positions and angles of the two vehicles, after the accident, were as shown on a diagram prepared by him and admitted into evidence. He also testified concerning the version of the accident given to him by the defendant, which did not conflict with that given by her at the trial.

It was upon this evidence that the jury returned this significant

verdict, "We, the jury, find the defendant, Mrs. Pullen, not guilty of negligence."

But the crucial inquiry is, was the issue of the defendant's negligence one for the jury to decide?

Here, the accident occurred on the plaintiff's side of the highway. When that fact was shown, a *prima facie* case of negligence was made out against the defendant, and the burden was cast upon her to explain how she came to be on the wrong side of the road. She was required to produce evidence, acceptable to the jury, tending to show that she was on the plaintiff's side of the highway because of something other than her own negligence. *Early* v. *Mathena, Adm'r*, 203 Va. 330, 334, 335, 124 S. E. 2d 183; *Bedget* v. *Lewin*, 202 Va. 535,539, 118 S. E. 2d 650.

The defendant's evidence was sufficient if it outweighed the plaintiff's *prima facie* case or if it left the ultimate question of her negligence in equipoise. These were questions for the jury unless the evidence produced in explanation was such that reasonable men should not differ as to its effect; unless the evidence in explanation was unreasonable, as a matter of law, or was inherently incredible. When all of the evidence was in, the ultimate burden remained upon the plaintiff to prove that the accident was caused by the negligence of the defendant. *Adams* v. *Allen*, 202 Va. 941, 946, 947, 121 S. E. 2d 364; *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 114, 60 S. E. 2d 4.

The defendant's explanation was that her automobile skidded from its proper lane of travel to the opposite lane. The skidding of an automobile on a slippery highway is not negligence, in and of itself, but is a circumstance to be considered along with all the other evidence in determining whether the resulting accident was caused by negligence. *Whitley* v. *Patterson*, 204 Va. 36, 38, 129 S. E. 2d 19; *Crist* v. *Coach Company*, 196 Va. 642, 650, 85 S. E. 2d 213.

The principal inquiry, in such cases, is as to the driver's conduct prior to the skidding. The purpose of the inquiry is to determine whether the skidding resulted from the negligence of the driver. The test is that of due care, having regard to the duty of the driver to exercise increased caution in the face of the known and obvious dangerous condition of the highway. And such questions, too, are ordinarily for the jury to decide. *Whitley* v. *Patterson, supra*, 204 Va., at pp. 38, 39; 8 Am. Jur. 2d, Automobiles, etc., § 689, p. 239.

In the case before us, the defendant consistently maintained that her vehicle skidded from its proper lane of travel. Her testimony

in that respect was unshaken. She testified fully as to her conduct prior to the skidding. She insisted that her vehicle had not skidded before and that she had no reason to know that it was going to skid on the curve in question. She told the jury what her speed was before the accident and what she did in an attempt to control her car.

We are of opinion that the defendant's evidence was of such character that reasonable men might differ as to its effect; that her explanation was neither unreasonable, as a matter of law, nor inherently incredible. A proper situation was presented for the jury to decide whether it would accept or reject the defendant's explanation. It was for the jury to say whether the defendant, in the exercise of due care under the circumstances, should have driven more slowly, should have applied her brakes sooner, or should have taken other measures to avoid the accident.

We do not overlook the fact that the verdict rendered at the first trial has been disapproved by the trial court and is not, therefore, entitled to the same weight on appeal as a verdict that has been approved. But by its verdict, the jury has found that the defendant's vehicle was on its wrong side of the highway because it skidded there and that the skidding was caused by something other than the defendant's negligence. That finding is supported by credible evidence and we cannot say, and the trial court should not have ruled, that the jury's finding was wrong.

Accordingly, the first verdict will be here reinstated, judgment will be entered thereon for the defendant and all proceedings subsequent to the first verdict will be annulled.

*Reversed and final judgment.*