## 19866

Donnie McQuinn DAVIS, III, Respondent, v. Joseph Elmore BOYD, Jr., and Petit's Janitorial Service, Appellants

(207 S. E. (2d) 101)

*Messrs. Barnwell, Whaley, Stevenson & Patterson,* of Charleston, *for Appellants,*

*Messrs. Lawton & Myrick,* of Allendale, *for Respondent,*

July 18, 1974.

Moss, Chief Justice:

Donnie McQuinn Davis, III, the respondent herein, instituted this action to recover damages for personal injuries resulting from a collision between the Chevrolet automobile driven by him and a Ford Econoline van owned by Petit's Janitorial Service and being operated by its agent, Joseph Elmore Boyd, Jr., the appellants herein. The respondent alleged that his injuries were proximately caused by the negligence and willfulness of the appellants in the operation of the Ford van. The respondent alleged that on or about July 23, 1969, he was operating his automobile in a southerly direction on the Folly Beach Road near the City of Charleston, South Carolina, when the Ford van owned and operated as above stated, while traveling at a high and unlawful rate of speed in a northerly direction on the Folly Beach Road, suddenly crossed over a six inch concrete median and crashed head-on into his automobile thereby inflicting serious personal injuries.

The appellants, by their answer, denied the material allegations of the complaint and as a further defense alleged that the collision resulted from a sudden emergency which was the unexpected breaking of the steering mechanism of the van, causing it to veer to the left across the median into the traffic lane occupied by the respondent.

This case came on for trial at the 1973 Term of the Court of Common Pleas for Charletson County, before the Honorable George T. Gregory, Jr. presiding judge, and a jury. At the conclusion of all of the testimony, the trial judge, upon motion duly made, directed a verdict for the respondent as to actual damages. He refused the motion of the appellants for a directed verdict in their favor but did grant their motion as to punitive damages. The only issue submitted to the jury was the amount of actual damages to which the respondent was entitled. After the jury had returned a verdict fixing the amount of actual damages, the appellants made a

motion for a new trial on the ground that the court erred in granting the respondent's motion for a directed verdict as to actual damages. The trial judge refused this motion and this appeal followed.

It is the position of the appellants that the trial judge erred in refusing to grant their motion for a directed verdict because of their defense of sudden emergency, asserting that the collision was due to a failure of the steering mechanism of the van and not to any negligence of the driver. The appellants further contend that the trial judge should have held as a matter of law that the sole proximate cause of the collision was the failure of the steering mechanism of the van.

The collision with which we are concerned occurred on the Folly Road Bridge which spans the Inland Waterway. At the point of collision, the Folly Beach Road was a four-lane highway, two lanes in each direction, separated by a concrete median approximately six inches high. The bridge has a steel grate surface. At the time of the collision the respondent was driving in a southerly direction on the right-hand side of the median occuping the lane nearest the median. Admittedly, the collision occurred without any fault or negligence on the part of the respondent.

The van, driven by Joseph Elmore Boyd, Jr., was going in the opposite direction and being driven to the right of the median but at the time was occupying the inner lane as he attempted to pass a dump truck. The van suddenly crossed over the concrete median into the southbound lane of traffic directly in front of the vehicle in which the respondent was traveling and collided headon into the front and side of said automobile. There was some testimony that immediately prior to the collision the van was being driven at an excessive rate of speed.

Boyd testified that as he pulled around the dump truck and got in the left lane of the highway that he had both hands on the steering wheel and just felt a "relaxed sensation like

something had fallen out, fallen apart." He testified that the steering wheel had a lot of tension on it, and when such gave way, the van started veering to the left. He said he attempted to turn the steering wheel so that his van would come back to the right but was unable to do so. He said the van continued to go to the left and crossed the median and collided with the vehicle of the respondent even though he applied the brakes and attempted to steer his van to the right. He testified that after the collision he looked down under the van and noticed something was hanging down and found out later that the tie-rod was broken. He admitted that he could feel a difference when driving from the concrete highway onto the steel grate of the bridge and that it was "a little rougher" and "it's like a humming sound". He also admitted that he told the officer who investigated the collision that "I had lost control of the steering and crossed the median", but nowhere made any mention to the officer of the breaking of the steering mechanism.

The appellants called as a witness a wrecker driver who towed the disabled van from the scene of the collision. This driver was employed by Oaks Service Station, who maintained and did the mechanical and service work on the trucks owned and operated by Petit's Janitorial Service. He testified that when he arrived at the scene of the collision the front end of the van was broken and the drag link was hanging down, but that nobody could say whether the drag link was broken before or after the wreck.

Carl D. Petit, the owner of the van and the operator of the janitorial service, testified that this particular vehicle was in good mechanical condition at the time of the collision. He said he had all of his vehicles checked regularly.

Section 46-392 of the 1962 Code provides that whenever, as here, a highway has been divided into two roadways, it shall be unlawful to drive a vehicle over, upon or across any central dividing section or other separating or dividing line. The statute also requires, where

the roadway has a dividing curb, separation section or line, that the motor vehicle must be driven to the right thereof. The evidence here is undisputed that the van of the appellants was driven across the median in violation of this statute. This constituted negligence *per se* in the absence of explanatory or excusatory circumstances. *Myers v. Evans,* 225 S. C. 80, 81 S. E. (2d) 32. Boyd did not drive the van as required by the statute but came across the median and there collided with the automobile of the respondent, causing his injuries. Such driving of the van was negligence sufficient to make out a *prima facie* case for the respondent and to cast upon the appellants the burden of proof of producing evidence in explanation.

In an action for the death of a motorist against the owner and driver of a truck which cut across the highway into the path of oncoming traffic and demolished the car of the plaintiff, whether the breaking of the steering mechanism was the cause or the result of the collision was a question for the jury. *Interstate Veneer Co. v. Edwards,* 191 Va. 107, 60 S. E. (2d) 4, 23 A. L. R. (2d) 532. We quote the following from the cited case:

"The evidence shows, and common experience tells us, that such a break in the steering mechanism as that claimed by the defendants is a rare occurrence when a motor vehicle is running over practically a level road. When it is found broken after such an accident as this, the logical inference is that it broke in the accident. Mechanics introduced as witnesses by the defendants admitted this to be true."

We think, under the evidence heretofore recited, that an issue of fact arose as to whether the break in the steering mechanism occurred before or in the collision. This precluded the trial judge from directing a verdict for the appellants.

The appellants' final exception asserts that the trial judge erred in directing a verdict for the respondent for actual damages. Such exception is restated as a

question in the brief of appellants, but was not argued therein and accordingly abandoned. See Supreme Court Rule 8, Section 2, and cases cited in the footnote thereto. The appellants not being entitled to a directed verdict in their favor and having abandoned their challenge to the direction of a verdict in favor of the respondent for actual damages, the judgment appealed from is accordingly,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.