# Richmond

GEORGE R. HOBBS v. J. C. THORNS.

January 25, 1954.

Record No. 4140.

Present, All the Justices.

The opinion states the case.

*White, Ryan & Holland*, for the plaintiff in error.

*Rixey & Rixey* and *A. A. Bangel*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This litigation arises out of an automobile collision which occurred at the intersection of Hartford street and Douglas avenue, in the city of Portsmouth, on December 16, 1951, at approximately 5:30 p. m. George R. Hobbs was driving a 1939 Chevrolet coupe northwardly along Douglas avenue, while J. C. Thorns was driving a 1951 Plymouth sedan, in which his wife, Mrs. Sallie Thorns, was a passenger, eastwardly along Hartford street. The collision occurred in the intersection, damaging both vehicles, and injuring Hobbs, Thorns and Mrs. Thorns.

Hobbs filed an action at law against Thorns and Mrs. Thorns to recover damages for his personal injuries and the damage to his car. Thorns and Mrs. Thorns filed cross-claims against Hobbs to recover like damages. When upon the trial before a jury it developed that Mrs. Thorns was a mere passenger in her husband's car and was exercising no control over it, the court struck the evidence on behalf of Hobbs in support of his claim against her. As to the remaining claims the jury found a verdict in favor of the plaintiff, Hobbs, against the defendant, Thorns, in the sum of $5,000, and disallowed the cross-claims of Thorns and Mrs. Thorns against Hobbs. On motion of the defendant, Thorns, the trial court set aside the verdict awarding damages to Hobbs and entered a final judgment for the defendant on that claim. It sustained the jury's verdict denying recovery on the cross-claims of Thorns and Mrs. Thorns and entered final judgment thereon in favor of Hobbs.

The matter is now before us on a writ of error granted Hobbs, the plaintiff below, to review the action of the lower court in setting aside and not entering judgment on the verdict in his favor against Thorns, the defendant below. No error is assigned to the action of the lower court in striking the plaintiff's evidence as to Mrs. Thorns, nor is any cross-error assigned to the entry of the judg-

ment denying a recovery on the cross-claim of Thorns and that of Mrs. Thorns. Hobbs received serious and painful injuries in the collision and the amount of the verdict in his favor is not questioned. Thus, the sole question presented on this appeal is whether there was sufficient evidence to warrant the jury in finding a verdict in favor of the plaintiff, Hobbs, against the defendant, Thorns.

Some of the material physical facts are not in dispute. It is agreed that the collision occurred about forty minutes after sunset when it was "hazy dusk." Some passing vehicles had their headlights on while others did not.

Douglas avenue, along which the Hobbs car was proceeding northwardly, is from 25 to 27 feet wide, while Hartford street, along which the eastbound Thorns car was traveling, is about 30 feet wide. There is no evidence of any traffic light, right of way, or stop sign at the intersection. Along the southern line of the intersection is a valley gutter or surface drain which crosses Douglas avenue at right angles.

Hobbs testified that as he approached the intersection his view to the left, the direction from which the Thorns car came, was partly obscured by a building and fence; that when he reached a point from 10 to 15 feet from the intersection he could see "safely between 50 and 75 feet;" and that when he had passed the southern curb line he could see to his left "a half block or more." He further testified that as he approached the intersection he was driving not over twenty miles an hour; that because of the valley gutter which he saw in front of him he slowed down "to probably 10 to 12 miles an hour;" that before entering the intersection he looked first to the right and then to the left and seeing no on-coming cars in either direction, "eased on out" into the intersection; that when he had reached "the middle of the street" he "heard something" to his left and "flashing" his eyes in that direction for the first time saw the Thorns car which was then some four or five feet away and about to strike his car broadside; that in the effort to

avoid a broadside collision he directed his car "a little to the right," and that the front of the Thorns car struck the left front fender of the Hobbs car "a very sudden and solid impact."

After the collision Hobbs drove his car clear of the intersection and brought it to a stop on the north side of Hartford street, headed east. The Thorns car came to a stop in the intersection, headed in a northeasterly direction.

Hobbs further testified that before the impact as well as afterwards, the Thorns car was displaying its parking lights but no headlights. The headlights on the Hobbs car were lit, he said.

Mrs. Helen I. Hobbs, the wife of the plaintiff, and A. R. Jones were passengers in the Hobbs car. They corroborated Hobbs' testimony as to the slow speed at which his car entered the intersection, and said that although they looked both ways as the car entered the intersection they did not see the approaching Thorns car until the collision was imminent, at which time the Hobbs car was well within the intersection. Jones said the collision occurred "in the middle" of the intersection. Mrs. Hobbs said it occurred "just about middle way" of the intersection. Both of these witnesses likewise testified that after the accident the Thorns car was showing only its parking lights and no headlights. Jones described the force of the impact as "a terrific blow," "directly into the side" of the Hobbs car. As the result of the impact, Jones said, the front end of the Thorns car "dropped down" in the intersection so that that vehicle "could not move."

The undisputed evidence is that it cost more than $400 to repair the damage to the Thorns car which was principally at the front end of the vehicle.

A police officer who came to the scene shortly after the collision testified that to the rear of the Thorns car he found "almost a car length of skid marks" which began "about the curb line." He found debris from the collision "near the center" or "a little to the southeast" of the center of the intersection.

Thorns gave the jury quite a different version of the collision. He said that as he approached the intersection he was going at approximately 18 to 20 miles an hour; that when he reached the intersection he put on his brakes and slowed down for a car which was at the northwestern corner and about to enter the intersection. He also observed another car which was meeting him and proceeding westwardly along Hartford street. Having seen that both of these cars were safely out of his way he started across the intersection, at which time he saw the Hobbs car some 65 to 80 feet south of the intersection on Douglas avenue. That car, he said, appeared to be "having engine trouble" and was "going very slow." As he (Thorns) proceeded across the intersection the Hobbs car "commenced to speed up." Observing that a collision was imminent and fearing for the safety of his wife who occupied the right front seat and next to the approaching car, Thorns said he put on his brakes and his car skidded to a stop and "was standing still" when the Hobbs car crossed the valley gutter, "bounced way up in the air and come down on my front right fender and slid off and went down east on Hartford," "like a crippled duck." The left side of the Hobbs car, he said, scraped across the front of the Thorns car, pulling the front bumper from the latter vehicle.

Thorns insisted that at the time of the collision his car was showing its headlights. Indeed, he said, it was not equipped with parking or fender lights, such as witnesses for the plaintiff testified were being shown.

Mrs. Thorns corroborated the testimony of her husband that their car entered the intersection first and was "at a standstill" at the moment of the impact.

By its verdict the jury has rejected Thorns' version of how the collision occurred, which if true would have exonerated him from liability. In finding a verdict for the plaintiff, Hobbs, it has found that the defendant, Thorns, was guilty of negligence which was a proximate cause of the collision and has exonerated the plaintiff, Hobbs, of contributory negligence. Moreover, its verdict has denied a recovery on the

claim of Mrs. Thorns against Hobbs. Since she was a mere passenger in her husband's car she would have been entitled to a verdict against Hobbs had Hobbs been guilty of any negligence which was a proximate cause of the collision. In short, the jury has found that the collision was occasioned solely by the negligence of Thorns.

Since no complaint is made as to the correctness of instructions, we may assume that the jury was properly instructed as to the issues.

We think there was ample evidence before the jury to warrant a finding that Thorns was guilty of negligence which was a proximate cause of the collision. While he testified that as he started across the intersection the Hobbs car was from 65 to 80 feet to the south of the intersection and proceeding "very slow," yet the physical facts were such as to warrant the jury in not accepting this as true. Since there is evidence that the collision occurred at or near the center of the intersection, Thorns' testimony would mean that while his car traveled one-half of the width of Douglas avenue, or about 13 feet, the Hobbs car traveled from 65 to 80 feet. There is no evidence that the Hobbs car entered the intersection at any such speed as to bring about this result. The jury may well have considered that, because of the darkness, or his admitted attention to two other cars, one of which he says was approaching on his left and the other meeting him, Thorns incorrectly estimated the proximity of the Hobbs car to the intersection.

Again, the jury may have inferred from the evidence of the extensive damage to the front of the Thorns car, the serious injury inflicted upon Hobbs, and the skid marks from the Thorns car leading up to the point of the collision, that that car had not, as Thorns testified, come to a stop before the impact, but, as the witnesses for Hobbs said, ran into the side of the Hobbs car with considerable force.

From all of the facts and circumstances shown by the evidence the jury was warranted in finding that the two vehicles *approached* the intersection at *approximately* the same time,

and that by the exercise of ordinary care Thorns should have observed this and yielded the right of way to the Hobbs car on his right. Code, § 46-238.[1] The jury may have concluded that the failure to yield this right of way was the proximate cause of the collision.

Moreover, the jury may have concluded that Thorns was negligent in operating his car without headlights. He testified that "half" of the passing cars had their headlights on and that his were lit. But the evidence on behalf of Hobbs is that before and immediately after the impact only the parking lights were displayed on the Thorns car. The jury may have concluded that proper headlights on this car would have revealed its approach to Hobbs and his passengers.

It is argued that Hobbs' admission that he did not see the Thorns car until both vehicles were in the intersection and the collision was imminent, shows that he was not keeping a proper lookout and was thus guilty of contributory negligence which bars his recovery as a matter of law. We do not agree with that argument. The plaintiff was only required to exercise ordinary care to keep a reasonable lookout as he approached and entered the intersection. It was not his absolute duty to see the other car unless it was in such plain view that looking with reasonable care he was bound to have seen it. *Oliver* v. *Forsyth*, 190 Va. 710, 716, 58 S. E. (2d) 49, 51. He says that before entering the intersection he looked in the direction from which the Thorns car came and did not see it. It is significant that both passengers in the Hobbs car testified to the same effect. The jury may have inferred that the Thorns car, traveling in the semi-darkness without headlights, was not discernible to a person exercising a reasonably careful lookout.

But aside from this, even if it be assumed that Hobbs was negligent in not sooner observing the Thorns car, it was for

[1] "§ 46-238. *Right of way; general rule.*—When two vehicles *approach* or enter an intersection at *approximately* the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, * * * ." (Emphasis added.)

the jury to say whether such negligence was a proximate cause of the collision. Since, by his own testimony, Thorns saw the approaching Hobbs car in ample time to have avoided the collision, the jury may have thought that it was too close for Thorns to attempt to pass in front of it, and that his failure to yield the right of way was the sole proximate cause of the collision. Indeed, as has been said, the jury's verdict on the issues involved necessarily indicates that it found that the negligence of Thorns was in fact the sole proximate cause of the collision.

On the whole we are of opinion that the issues of the negligence of the defendant, Thorns, and the contributory negligence of the plaintiff, Hobbs, were for the jury, and that its verdict was binding on the trial court and should not have been set aside. As we have so often said, if reasonable men may honestly differ from the proof submitted as to the negligence or contributory negligence charged, the question is not one of law, but one of fact for the jury under proper instructions.

Accordingly, the judgment under review will be reversed, the verdict of the jury in favor of the plaintiff, Hobbs, against the defendant, Thorns, reinstated, and final judgment entered thereon with interest from the date of the verdict. Code, § 8-223.

*Reversed and final judgment.*