114 S.E.2d 626 (1960)
201 Va. 928
RAILWAY EXPRESS AGENCY, INC., OF VIRGINIA et al.
v.
Brainard Franklin MOORE.
Supreme Court of Appeals of Virginia.
June 13, 1960.
*627 Russell T. Bradford, William Moultrie Guerry, Norfolk (Bradford & Guerry, Norfolk, on brief), for plaintiffs in error.
Richard D. Mattox, Portsmouth (Willard J. Moody, Moody & Mattox, Portsmouth, on brief), for defendant in error.
Before EGGLESTON, C. J., and SPRATLEY, BUCHANAN, MILLER, WHITTLE, SNEAD, and I'ANSON, JJ.
BUCHANAN, Justice.
The plaintiff, Brainard Franklin Moore, was injured in a collision between the motorcycle he was riding and a truck owned by Railway Express Agency, Inc., and driven by its agent, William R. Harding. He brought this action for damages against the owner and driver of the truck, a jury returned a verdict in his favor against both defendants, on which the court entered judgment, and the defendants are here on a writ of error. The only contention they make is that the plaintiff was guilty of contributory negligence as a matter of law and therefore not entitled to the verdict and judgment against them.
The accident occurred in the afternoon of a clear day in October, 1957, at the intersection of High street and Water street, in the city of Portsmouth. High street runs east and west, and westwardly from the intersection is 60 feet wide between sidewalks, which are 20 feet wide on both sides of the street. Eastwardly from the intersection the street narrows materially and ends at the water's edge a short distance away. The narrowing of the street was caused by the ferry terminals (abandoned at the time of the accident), constructed *628 so as to occupy approximately the north half of High street beginning about 30 feet east of the intersection, and leaving only about 25 feet on the south side for travel.
Water street runs north and south, is 28 feet wide between curbs on the south side of the intersection, with a sidewalk on its west side along which parking is permitted. It is a one-way street for vehicles going north. Immediately adjacent to the west edge of the sidewalk is the wall of the Portsmouth Star building, four stories high and extending to the inside edge of the sidewalk on the south side of High street.
At the southeast corner of this intersection is a lot on which stands the Seaboard Airline Railroad station. Adjacent to the east side of Water street this building sits back about 90 feet from the south curb of High street. Between the front of it and the sidewalk on High street is the Seaboard parking lot, which extends around to the east side of the building. It is not clear from the evidence as to who owns the land used for the parking lot, but it is clear that the lot has long been in the possession and control of the Seaboard Airline Railroad Company, and that company has signs posted at various places stating that it is private property and to be used only by the patrons of the railroad. Its agents customarily placed warning tags on vehicles parked in disregard of the signs. The driveway through this parking lot approaches and enters the southeast corner of the intersection at an acute angle with the east line of Water street.
Just before the collision the plaintiff was riding his motorcycle north on his right-hand side of Water street at a speed of about ten miles an hour as he approached the intersection, at which there were no traffic signals or signs. The wall of the Star building was to his left so he could not see in that direction until he got to the intersection. He testified that he looked to his right as he neared the intersection and saw cars parked in the parking lot in front of the railroad station and none was moving. When he came to High street he changed into low gear and slowed down to three or four miles an hour. Cars were parked to his left along the south side of High street and he had to go farther into the intersection to be sure that no traffic was coming from that direction. When he saw that none was coming, "I went to make my approach across High street. As I looked back I saw this truck coming out of the Seaboard parking lot right out in front of me." The front wheel of his motorcycle collided with the left front fender of the truck about three feet from the front. At the time of the impact the plaintiff was approximately halfway across the south side of High street. Asked on cross-examination why he did not see the truck, he replied, "He wasn't there at the intersection when I went into the intersection." Asked whether the truck was approaching the intersection, he responded, "If he was approaching it he would have been approaching from behind me. I didn't see him, sir."
The driver of the truck testified that he drove his truck from the back of the Seaboard building through the parking area and when he came to the intersection he stopped "for a matter of seconds"; that he then "proceeded out across Water Street at an angle to get over on the right-hand side of High Street going up High Street." He said that "the only way you can get over is to go at an angle, naturally, to go across to get to the other side because the entrance to the lot is over to the side and you have to go at a diagonal angle to go across." His purpose was to go west on High street. He said he looked before he entered the intersection but did not see the motorcycle and was almost through the intersection when the collision occurred. "I didn't see him till he hit me," he said. He repeated that on coming into the intersection he entered the east side of Water street and then proceeded through the intersection west on High street.
*629 He admitted, however, and other evidence showed, that he could have driven straight across High street instead of diagonally, and then turned into its westbound lane.
Both the plaintiff and the driver of the truck were familiar with the intersection. Neither saw the other until the moment of the collision. The negligence of the truck driver is not questioned. The defendants contended below, and vigorously argue here, that the plaintiff was guilty of contributory negligence because he did not sooner see the truck.
With a jury verdict in his favor, confirmed by the trial court, the plaintiff is, under the familiar rule, entitled to have the evidence and the reasonable inferences from it considered in the light most favorable to him. Contributory negligence on his part was a question for the jury unless reasonable men would necessarily conclude from the evidence that he was negligent. Alvey v. Butchkavitz, 196 Va. 447, 456, 84 S.E.2d 535, 541.
In applying this rule and refusing to set aside the verdict, the trial court stated:
"* * * The plaintiff first looked to his right when about ninety feet from the intersection. He stated that the truck was not in sight which is plausible under the evidence. He next looked toward his left for traffic traveling in an easterly direction on High street. After he had entered the intersection, he again looked to his right and the truck came from his right across his path, going at a speed of about ten miles per hour. The plaintiff was traveling at the time of the accident between three and four miles per hour, which is about the speed a man walks. Although the roadway at the eastern end of High Street where the accident occurred is not a private roadway, yet it is not a normal intersection, and taking this fact into consideration the jury could reasonably have concluded that the actions of the plaintiff at the time of the collision were those of a reasonably prudent person and therefore he was not guilty of any contributory negligence which proximately contributed to the accident."
On entering the intersection it was the duty of the plaintiff to look with reasonable care, not an absolute duty to discover the truck unless it was in such plain view that by looking with reasonable care he was bound to have seen it in time to have avoided the collision. Oliver v. Forsyth, 190 Va. 710, 716, 58 S.E.2d 49, 51; Hobbs v. Thorns, 195 Va. 639, 645, 79 S.E. 2d 854, 857.
The collision in the case last named occurred at a normal intersection. It was argued that the plaintiff's admission that he did not see the defendant's car until both vehicles were in the intersection and the collision was imminent showed that he was not keeping a proper lookout and was, therefore, guilty of negligence which barred his recovery as a matter of law. We did not agree with the argument but held that the jury might have inferred that the defendant's car, traveling in the semi-darkness without headlights, was not discernible to a person exercising a reasonably careful lookout.
In the present case the jury could have believed the testimony of the plaintiff that he looked to his right when he reached the south side of the parking lot in front of the Seaboard station and saw no movement among the cars parked there. This could have been so because the truck came around from the east side of the station and, as plaintiff said, if the truck was approaching the intersection as the plaintiff also approached it, it could have been approaching from behind him. As the plaintiff cleared the Star building, and the parked cars which he said were in front of it, it was reasonable, in fact natural, that he would have looked to his left as he *630 said he did because he was then entering the eastbound lane of High street, from which traffic would ordinarily be expected. He had seen nothing then to alert him to danger from his right. When he had satisfied himself that there was no danger from his left, he turned back to look to his right and the truck, coming from behind him across his lane of travel and in the wrong lane of High street, was immediately in front of him and he could not avoid colliding with it. Under these circumstances it was a question of fact for the jury to decide whether the plaintiff had looked with reasonable care, and not a question of law for the court to decide. The court has entered judgment on the verdict and we cannot say that it is plainly wrong or without evidence to support it. Code § 8-491.
"What is a proper lookout in a given situation is a question which can only be answered by the facts of each particular case." Leo Butler Co. v. Wilbun, 192 Va. 263, 267, 64 S.E.2d 738, 740. The facts of the present case, as the jury found them to be, clearly distinguish it from the cases relied on by the defendants, which in general were controlled by the settled rule that a plaintiff will not be heard to say that he did not see the vehicle with which he was in collision when that vehicle was in such plain view that if he had looked with reasonable care he would have been bound to have seen it. The principle was thus stated by the present Chief Justice in Russell v. Kelly, 180 Va. 304, 309, 23 S.E.2d 124, 126: "When a situation is open and obvious, one will not be heard to say that he looked but did not see. But that is not the case here." It is also not the case on this appeal.
The plaintiff assigned cross-error to an instruction which told the jury that when two vehicles approach or enter an intersection at approximately the same time, the driver on the left must yield to the vehicle on the right, and if the jury believed that Harding had the right of way and the plaintiff did not yield it to him, then they should find for the defendants. This instruction was more favorable to the defendants than they were entitled to have it. This was not a normal intersection, as the evidence showed and as the court found. The truck admittedly entered the intersection from the parking lot. To those familiar with the area, as was this plaintiff, there was nothing to indicate that it was not what the Railroad Company claimed and advertised it to be, with at least the tacit consent of the city, a private parking lot. On emerging from it as he did into the public streets the driver of the truck did not have the right of way, and the jury evidently so decided. See Code §§ 46.1-221, 46.1-223. He drove from the parking lot diagonally across the east side of Water street and was proceeding on his wrong side of High street when the collision occurred.
The judgment appealed from is
Affirmed.