## Staunton

HAZEL STIMELING v. THOMAS M. GOODMAN.

September 2, 1960.

Record No. 5105.

Present, Eggleston, C. J. and Buchanan, Whittle, Miller, Snead and I'Anson, JJ.

The opinion states the case.

*A. B. Crush, Jr.* (*C. E. Cuddy,* on brief), for the plaintiff in error.

*William B. Poff* and *Robert J. Rogers* (*Woods, Rogers, Muse & Walker,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Hazel Stimeling, appellant, instituted action against Thomas M. Goodman for damages because of personal injuries she sustained when the automobile she was driving collided with a vehicle operated by Goodman. At the conclusion of all the evidence, the court sustained defendant's motion to strike plaintiff's evidence, discharged the jury and entered summary judgment for defendant on March 26, 1959.

The litigants will be referred to at times as plaintiff and defendant in accordance with the positions they occupied in the court below.

Plaintiff challenges the rulings of the court which held that (1) plaintiff was guilty of contributory negligence as a matter of law; (2) the doctrine of sudden emergency was not applicable; (3) plaintiff could not introduce in evidence a written estimate of damages to the vehicle she was operating.

The collision occurred on April 28, 1958, at approximately 5 p. m. on Route 658, a secondary highway called Dick's Creek Road, at a "blind" curve one-half mile south of Craig Springs. At that point the road, constructed of tar and gravel, runs north and south. It was not marked by white lines, but had a width of 14 feet 6 inches which was sufficient for one car to pass another. On the west side there was a shoulder between 2 and 3 feet wide held by a rock retaining wall approximately 8 feet high, at the bottom of which a stream flowed. The width of the shoulder on the east side is not stated but there was an ascending 3 foot bank adjacent to it which levelled off to the road at or near the point of impact. Proceeding south, the road was upgrade and curved sharply to the left. The road was dry, the weather clear and visibility was about 150 feet.

Plaintiff, who was driving a 1956 Pontiac automobile owned by her husband, Stuart Stimeling, was proceeding south at a speed of between 25 and 35 miles per hour, and defendant was operating his 1953 Studebaker north at a speed between 20 and 35 miles per hour. Walter Black was riding with plaintiff, and defendant had no passengers in his vehicle. Both operators had traveled the road frequently and were familiar with it.

As plaintiff approached the curve she observed defendant driving on her side of the road. She slammed on her brakes and her car

"slewed" to the left and came to a stop partly in the northbound lane about 75 feet distant from where she first saw defendant at which time her vehicle was struck head-on by defendant's car which in the meantime had returned or was in the act of returning to its proper side of the road. Both vehicles laid down skid marks. With regard to plaintiff's automobile, there was a mark 33 feet in length leading to the left front wheel and another 20 feet long leading to the right rear wheel which began 2.5 or 3 feet from the west edge of the hard-surface portion of the roadway and ended 4 feet 4 inches from it. Both skid marks from their beginning angled toward the shoulder of the northbound lane. There was a skid mark left by defendant's vehicle 28 feet long leading to its right front wheel and one 17 feet long terminating at its left rear wheel, which was 6 feet 9 inches from the west edge of the hard-surface. Defendant's skid marks also angled toward the shoulder of the northbound lane. Plaintiff was rendered unconscious for about 5 minutes and she was taken to the hospital for treatment of her injuries. Both cars were damaged extensively.

The trial court having struck plaintiff's evidence because it determined she was guilty of contributory negligence as a matter of law, we are required to view the evidence in the light most favorable to plaintiff. *Pike* v. *Eubank*, 197 Va. 692, 698, 90 S. E. 2d 821; *Mann, Adm'x* v. *Railway Company*, 199 Va. 604, 605, 101 S. E. 2d 535; 7 M. J., Evidence, § 297, p. 693.

The evidence conclusively shows that when the impact occurred plaintiff's car, which was proceeding south, was partly across the center of the narrow road into the northbound lane. It is likewise true that when defendant first saw plaintiff's automobile approaching around the curve, his vehicle was at least partly in plaintiff's lane, and he applied his brakes and "cut" his car to the right. Defendant was asked on cross-examination:

"Q. And you don't know where in the road she was at that time, do you?

"A. No, I wouldn't say.

"Q. In other words, if she says she was on the right side you couldn't deny that, could you?

"A. No, I wouldn't say.

\* \* \* \* \* \* \*

"Q. And where were you in the road at that time?

"A. Well, it was more or less both cars in the center of the road.

"Q. You just told me now that you couldn't say where the car was when you first saw it, Mr. Goodman?

"A. I said more or less, I couldn't tell you where they was.

     \*       \*       \*       \*       \*       \*       \*

"Q. That could have happened, but when you first saw her if she said she was on the right-hand side you certainly can't deny that, can you?

"A. She could have been and she could have been in the center of the road. I couldn't say exactly where she was."

Trooper Thomas E. East testified that plaintiff stated to him sometime after she was discharged from the hospital that both vehicles were traveling in the middle of the road just prior to the accident; that an automobile equipped with four-wheel brakes on a dry, hard, approximately level stretch of the highway traveling 30 miles per hour will cover 44 feet in one second; that the reaction time, or that interval of time which elapses when an emergency arises and brakes are applied, of the average driver at that speed is ¾ of a second or 33 feet, and that the total stopping distance is 80 feet. (§ 46.1-195, Code 1950, as amended). He further stated that due to the slight elevation in the road at the curve, a car "would more than likely go to the left under the least resistance" when the brakes were applied. He was asked: "Was there any physical evidence to indicate where her car was before the skid marks were left?" He replied: "That's right, there wasn't any."

Plaintiff said she did not recall having told the officer that both vehicles were in the middle of the road when she first observed defendant's car. On the contrary she testified that her vehicle was on her proper side of the road when she first saw defendant's car approaching; that "it happened so fast the only thing I did was slam my brakes on", and that the car slid slightly to the left and stopped before being struck by defendant's car. On direct examination she testified:

"Q. Let me ask you this, when you saw Mr. Goodman's car did you have time to do a lot of figuring and deciding as to what you should or should not do?

"A. No.

"Q. How much time passed between the time that you saw this car and the time the accident occurred as best you can tell?

"A. It seemed to me a split second.

"Q. Did you put your brake on and attempt to avoid this wreck?

"A. I did."

Walter Black, who was in the front seat with plaintiff, said that plaintiff "wasn't getting over 35 and I don't think she was making 30"; that plaintiff was on her proper side of the road when defendant's car came around the curve, and that defendant appeared to be "laying over on her side". He said he exclaimed: "Look out, Hazel" and she "grabbed her brakes and in the windshield I went." When asked why he made that remark to plaintiff, he replied: "He was coming right on us and I figured he was going to hit us." He further testified when plaintiff applied her brakes, the car "slewed" to the left and the vehicles collided about in the middle of the road.

Thus we see there was positive testimony of plaintiff and Black that plaintiff's car was on her proper side of the road when defendant's car was first seen coming around the curve. The skid marks made by plaintiff's car show that at the moment the impression was made the left side of her car was approximately 9 inches to the left of the center of the road. Since the road is upgrade, proceeding south, and not approximately level the reaction time and distances given in the tables (§ 46.1-195) have but little probative value under these circumstances. However, it is common knowledge that a person who drives at a speed of approximately 30 miles per hour requires some reaction time before the brakes become effective. We cannot say that plaintiff's skid marks, which began 2.5 or 3 feet from the west edge of the hard-surface and angled to the left at their beginning, conclusively show that she was not on her proper side of the road when she was confronted with defendant's car approaching in her lane of travel dangerously near. Nor can we say that the skid marks render the testimony of plaintiff and Black incredible. Reasonable men may differ as to whether plaintiff was guilty of contributory negligence. Under these circumstances it was a jury question, and it was error to hold that she was guilty of contributory negligence as a matter of law and strike her evidence. *Bates, Adm'x* v. *Thompson*, 200 Va. 501, 505, 106 S. E. 2d 728.

We also hold that the doctrine of sudden emergency was applicable under the evidence presented.

Plaintiff's final contention is that the trial court erred in refusing to permit her to introduce in evidence a written estimate of damages to the vehicle she was operating. She argues that it was

admissible for the purpose of showing the severity of the impact and excessive speed on defendant's part. Without objection, Walter Billings, service manager for Woodson-Pontiac, was permitted to testify that the estimate for repairs to the car amounted to $1,024.68. He stated in some detail the damages done to the automobile as a result of the accident. After he had so testified, plaintiff attempted to offer the written estimate in evidence and the court sustained defendant's objection thereto. This action was not brought to recover money for damages done to the vehicle, and the estimate of repair costs was not itself an issue in the case. The jury had been informed by Billings as to the nature of the damages to the car and plaintiff was not entitled, in addition thereto, to submit the written estimate to the jury. We find no merit in this assignment of error.

For the stated reasons, the judgment appealed from is reversed and remanded for a new trial.

*Reversed and remanded.*