## Richmond

STANLEY ROSCOE EARLY v. FRANCES F. MATHENA, ADMINISTRATOR, ETC.

March 5, 1962.

Record No. 5361.

Present, All the Justices.

*John H. Locke* and *Marcus H. Long* (*Gentry, Locke & Rakes*, on brief), for the plaintiff in error.

*Robert J. Rogers* and *Bentley Hite* (*John H. Thornton, Jr.; Woods, Rogers, Muse & Walker*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Stanley Roscoe Early, hereinafter referred to as Early, or plaintiff, filed a motion for judgment against Frances F. Mathena, administrator

d. b. n. of the estate of Phillip Leroy Dowdy, deceased, hereinafter referred to as administrator, as she is designated in the record, to recover damages for personal injuries sustained when a truck operated by him was in collision with a passenger automobile operated by Phillip Leroy Dowdy. A counter-claim was filed by the administrator against Early for damages because of the death of her decedent from injuries received in the collision.

The case came on to be tried on November 29, 1960, before the trial court and a jury. At the conclusion of the evidence, Early moved to strike administrator's evidence on the counter-claim and for summary judgment in his favor on the original motion for judgment and the counter-claim. The court granted the motion to strike administrator's evidence on the counter-claim, and granted Early's motion for summary judgment as to that claim; but overruled the motion to enter summary judgment for Early on his original motion for judgment. However, on the following day, November 30, 1960, the trial judge reversed his rulings, and held that all issues were to be submitted to the jury. Early duly excepted. The case was submitted to the jury, and the jury returned a verdict in favor of the administrator on the claim of Early, in favor of the administrator on her counter-claim against Early, and fixed the damages at $20,000.00. The court overruled motions to set aside the verdict as contrary to the law and the evidence, and to empanel a jury to ascertain the amount of damages due Early. Judgment was entered on the verdict. We granted this writ of error.

The only issue presented on appeal is whether the trial court should have set aside the verdict as plainly wrong and contrary to the undisputed physical facts.

The accident occurred on August 6, 1958, at 9:20 a. m., on Rock Road, within the city limits of Radford. Rock Road runs generally east and west, has a 19-foot wide macadam surface, and there are shoulders 2 to 3 feet wide on each side, with shallow drainage ditches alongside. The accident occurred about half-way around what is described as a slight or moderate "S" curve in the road. At the point of the accident, the road has a 5½% downgrade to the east, and curves slightly to the left. Visibility towards the east is limited to 100 to 150 feet. Traveling west, or upgrade, the road curves to the right, and visibility ahead is very limited. A witness said: "You would have to be into the curve to see what, if any, traffic was going east on the road." The roadway was dry and the weather clear.

Phillip Leroy Dowdy, 15 years of age, was driving a 1947 Chevrolet

two-door sedan, proceeding west at a speed variously estimated at from 15 to 50 miles per hour. With him in the car were his three brothers: Kenneth, 14 years of age, Steven, 10, and Jerry, 6, and his friend, Kenneth Wilson, 15. Kenneth Dowdy occupied the right-hand portion of the front seat; Kenneth Wilson, the middle of the front seat; Steven Dowdy, the right portion of the back seat; and Jerry Dowdy, the left portion of the back seat.

Early, aged 26 years, was driving a 1958 Ford dump truck loaded with 17,000 pounds of sand or crushed rock, in an easterly direction, at a speed estimated by him to be 25 miles per hour. He had traveled the road frequently, and was familiar with it. There is no evidence as to Phillip Leroy Dowdy's knowledge of the road.

As the two vehicles rounded the curve, they came together in a head-on collision, on Early's right-hand side of the road—in fact, partially on his right shoulder of the road, off the hard surface. The truck left 19 feet of skid marks in a straight line, wholly to the right of the center of the highway, traveling east. There were no skid marks left by the Dowdy car. Neither vehicle was knocked backwards or turned sideways by the crash. The left wheels of the Dowdy automobile were over on Early's right-hand shoulder of the highway. Both vehicles were extensively damaged, especially in their front portions, and the frame of the truck was bent down in the center. A quantity of sand was thrown from the body of the truck across its cab and motor into the Dowdy car. Early was slightly injured, while Phillip Leroy Dowdy was killed and the other occupants of the passenger car were injured to some extent.

Early and Jerry Dowdy were the only occupants of the two vehicles who testified as to how the collision occurred.

Photographs were taken from the sides and the rear of each of the vehicles, at the scene of the accident within a short time after it happened, and before the vehicles had been moved. They show that the two vehicles came together in a direct head-on collision, each pointed straight toward the other, parallel with the roadway. Neither was turned away from the road, nor at an angle toward the other vehicle.

Early testified he was driving on his right-hand side of the road; that when he first saw the Dowdy car, it was completely on its left side of the road, and traveling at "an extreme speed" towards him; that he applied his brakes and sounded his horn, but got no response from Dowdy; and that the cars came together within a couple of seconds.

Rosie Lee Phillips, a colored woman, testified that she had been to the house of a Mrs. Lawson, east of the point of collision, and had just left and was walking westerly along the road when the Dowdy car, traveling to the west, came up on its left side of the road, passed her and approached the curve still on its wrong side of the road; that as it passed her, she observed its driver had turned around and was talking to some little boys standing up in the back of the car; that she heard the horn of the truck blow; that she looked and saw the cars collide on the south side of the road and heard the sound of the impact; and that she then went to the scene and tried to help the injured.

Three members of the Lawson family testified that Rosie Lee Phillips was sitting under a tree in front of their home talking to their mother when the accident happened. Two of them said that the Dowdy car was on its right side of the road when it passed their house, 710 feet east of the point of the accident, on the south side of the road, and that it was not then traveling more than 10 or 15 miles per hour. Mrs. Lawson was sick and unable to testify. Some of the Lawson family were in the house and some in the yard.

The two boys, Kenneth Dowdy and Kenneth Wilson, who were on the front seat, and Steven Dowdy, who was on the back seat, were each knocked unconscious by the impact of the crash. Each testified he did not see the truck before the collision; but that prior thereto, about 75 to 100 feet distant therefrom, their car was on its right side of the road, and traveling at not more than 25 miles per hour.

Jerry Dowdy, who was 8 years old at the time of the trial, two years after the accident, testified that he saw Early's truck over on his, Jerry's, side of the road and his brother "cut over and the truck cut over and hit it." At first he did not know whether he was sitting down or standing up in the rear of the car at the time of the collision; but finally said that he thought he was sitting down. He first said he saw the truck by looking over the shoulder of his brother, Phillip, and later by looking between the boys seated in front of him. He was in the second grade at school at the time of the trial. He attended Sunday School but did not know its name. Nor did he know whether the road was dry or not when the accident occurred. He was unable to say how far away the truck was when he first saw it, although he said he knew something about distances. He said that he did not feel any brakes being applied to the vehicle in which he was riding, and if it swerved in any direction, "I forgot." He did not know how long it was after he saw the truck on its wrong side before his brother,

Phillip, cut to the left. He believed he was knocked unconscious by the collision. He was uncertain in his answers to other questions, and answered a great many by simply nodding his head, by saying "I don't know," or "Huh, huh," or "Uh-hum." He was unable to testify as to the speed of the vehicles, or their position, on the roadway, except to say that the truck was on its wrong side, and his brother cut to the left to avoid it.

Early further testified that 3 or 4 weeks after the accident, the parents of the Dowdy boys came to his house and Dowdy said he knew that the accident wasn't the fault of Early, because the boys on the back seat of the passenger car "were cutting up and Phillip had turned around to quiet them down." Mrs. Early corroborated her husband's statement; but Mr. and Mrs. Dowdy denied it.

We are aware of the function of a jury to resolve conflicts in evidence and of the weight to be attached to the verdict of a jury approved by the trial judge. On the other hand, we are also aware that "Even though all the conflicts in the oral testimony have been resolved in favor of a plaintiff by the verdict of a jury, if the physical facts are such as to demonstrate that the oral evidence upon which the jury based its verdict is incredible, then the trial court and this Court are not bound by the verdict of the jury." *Noland* v. *Fowler*, 179 Va. 19, 23, 18 S. E. 2d 251.

In *Smith* v. *Turner*, 178 Va. 172, 180, 16 S. E. 2d 370, 136 A. L. R. 1251, 1255, we said: "Where a verdict is 'plainly wrong,' it should be set aside even if it is supported by some evidence."

See also *Forbes & Company* v. *Southern Cotton Oil Company*, 130 Va. 245, 259, 108 S. E. 15; *C. & O. Ry. Co.* v. *Barlow*, 155 Va. 863, 156 S. E. 397; *White* v. *Greyhound Lines*, 158 Va. 462, 469, 163 S. E. 78; *Braswell* v. *Va. Electric Co.*, 162 Va. 27, 38, 173 S. E. 365; *Va. E. & P. Co.* v. *Thomas*, 180 Va. 292, 299, 23 S. E. 2d 148.

Here, the evidence conclusively shows that at the time of the collision, Early's truck was completely on his right side of the road, evidencing the intention of the driver to escape what he saw threatened. Moreover, the skid marks of his truck extended back 19 feet in a straight line, on the right of the center of the road, showing its course prior to the collision. It was the duty of the driver of the Dowdy car to drive on his right side of the road. Code, § 46.1-203, 1958 Replacement Volume. He did not so drive; but drove it across the road to the extreme left, with its left wheels 2 to 3 feet off the hard surface and there collided head-on with the Early truck. Such movement of the Dowdy car was evidence of negligence to make out a

*prima facie* case for Early, and to cast upon the driver of the Dowdy car the burden of producing evidence in explanation. *Interstate Veneer Company* v. *Edwards*, 191 Va. 107, 112, 113, 60 S. E. 2d 4,7; *Adams* v. *Allen*, 202 Va. 941, 946, 947, 121 S. E. 2d 364.

Mindful of the foregoing principles, in the case before us we find that the physical facts are without dispute, and that the administrator has not overcome the *prima facie* case in favor of Early. The physical facts which are entitled to great weight, and the photographs speak out loudly and clearly. They corroborate and lend credibility to the evidence of Early. There were no tire marks made by the Dowdy car, nor any physical evidence that it was turned at any angle to the road, or from the direction in which it was traveling prior to the collision. It was not pushed or knocked backwards by its head-on collision with a truck loaded with 17,000 pounds, although it was running slightly upgrade, indicating that it must have been operating at a greater speed than estimated by its passengers. Under the circumstances and with the limited visibility and time involved, it is hardly reasonable to believe that the operator of the Dowdy car, or his brother, sitting on its back seat, could have seen the truck coming on its left side of the road, turn to its right, go completely across the right side to its right shoulder and get parallel with the road, all before the collision occurred.

The undisputed physical facts, and the overwhelming weight of the evidence are against the verdict of the jury. They remove all conflicts and contradict the somewhat vague and indefinite evidence of the infant, Jerry Dowdy, and leave the verdict without credible support. *Brooks* v. *Commonwealth*, 145 Va. 853, 855, 134 S. E. 726. The evidence of the child, as compared with the evidence to the contrary, is unreasonable and incredible.

In *Stimeling* v. *Goodman*, 202 Va. 111, 115 S. E. 2d 923, upon which the administrator relies, the facts were different from those here. Both vehicles in that case left skid marks, indicating that the operators of each car saw the other. The tire marks showed an angle collision, and the fact that the defendant was over on the wrong side of the road as the cars approached each other. The defendant admitted that he did not know where the plaintiff's car was, and that if she said she was on her right-hand side of the roadway, he would not deny it. The collision occurred near the center of the roadway, and was not a head-on collision. The evidence of the plaintiff was corroborated by another adult and by the physical facts. We there

held that the evidence was sufficient to justify an instruction on the doctrine of sudden emergency.

We think that the trial court should have sustained the motion of Early to strike the administrator's evidence, and submitted the case to the jury solely on the issue as to the amount of damages due Early. Therefore, the verdict of the jury is set aside; the judgment of the trial court reversed; and the case remanded to the trial court on the sole issue as to the amount of damages to which the plaintiff, Early, is entitled.

*Reversed and remanded.*