Ricky Lee REED, a Minor, by Norma Reed, Next Friend, Plaintiff-Respondent,

v.

Samuel Owen BURKS et al., Defendants-Appellants.

No. 24101.

Kansas City Court of Appeals.

Missouri.

June 7, 1965.

Motion for Rehearing or Transfer to Supreme Court Denied July 15, 1965.

Terence C. Porter, Columbia, for defendants-appellants.

Granville E. Collins, Fulton, T. E. Lauer, Columbia, for plaintiff-respondent.

HUNTER, Judge.

This is an action for damages brought by Ricky Lee Reed, a minor, by Norma Reed, his next friend against Samuel Owen Burks and Ruby Fay Mirts, administratrix of the estate of Francis Leon Robison, deceased. The case as to Burks was submitted on a lookout instruction hypothesizing a duty on Burks to turn his car to his right to avoid the collision without re-

quiring any finding as to which side of the road the Burks car was on or that Burks could turn with safety to himself and the occupants of his vehicle. Plaintiff obtained a jury verdict and judgment for $11,590.00 against both Burks and Mirts. Only defendant Burks has appealed.

The collision on which this action is based took place on July 9, 1962, at approximately 7:45 p. m. on Callaway County Route "N" about five-tenths mile north of the intersections of County Route "N" and "B" where a northbound Chevrolet driven by Francis Leon Robison, collided with a southbound 1955 Pontiac driven by Samuel Owen Burks. The collision occurred at or about the crest of a hill described as being sharp and which obstructed the view of each driver until certain specific points were reached. Other than a few inches in width of gravel, there were no shoulders on either side of the blacktop paved portion of the road which was 17 feet in width. The road had no marked center line. There was a ditch of unstated depth on the west side of the roadway.

Immediately prior to the collision, plaintiff, then age 11, was riding in the middle of the front seat of the Chevrolet automobile being driven by Robison. George Byrd was sitting at plaintiff's right and there was another passenger in the rear. Burks was accompanied in his automobile by his two small children. The driver and one passenger in the Robison vehicle were killed.

There was divergent testimony as to how the collision occurred. Evidence on behalf of defendant Burks was that prior to the collision his Pontiac automobile was traveling about 45 to 50 miles an hour. It was being operated entirely on the right hand side of the roadway, twelve inches from the west edge of the blacktop. Its headlights were not burning.

The northbound Robison Chevrolet was being operated at a speed stated variously as "65", "65 to 70" and "70" miles per hour. Its headlights were burning. According to

Burks, the Chevrolet when he first saw it was positioned on the road so that its left front wheel was in the front center of Burks' Pontiac (and, hence, the Chevrolet inferentially was well over onto its wrong side of the road).

However, according to witness George Byrd, the Chevrolet was being operated "mostly on his side" * * * "His left front wheel was right about the center of the road." * * * "Q. Now, then, when you sighted Burks car, was it on its own side of the road? A. No. Q. Where was it? A. The left front wheel was over the middle." * * * "His front wheel was over the center line." * * * "You know when you saw it coming, it was on the wrong side of the road? A. Yes, sir." Byrd didn't see the Pontiac until it was "right in front" of him, and he stated Robison cut his car to the right and hit his brakes before the collision. According to Byrd the impact occurred about 40 feet (south) from the top of the hill.

Defendant Burks testified he was looking ahead at the road as he drove along but didn't see the approaching Chevrolet until it was "two or three car lengths" from him. At that point, according to Burks, he was still about 40 feet away from the crest of the hill. "I just seen he was direct in front of me and I knew we was going to hit." He instantly applied his car brakes. "I cut my car to the right and threw my arm in front of the children." Then the impact occurred.

Highway Patrolman Fischbeck, who arrived at the scene shortly thereafter placed the collision at the crest of the hill, "where the tire marks begin". Fischbeck stated the left front tire mark (from braking) of the Burks car started 7 feet east of the west edge of the roadway. At that same point the left tire marks of the Chevrolet were found to be one foot east of those of the Pontiac or 8 feet east of the west edge of the pavement. The Pontiac after the collision traveled about 267 feet south, stopping at a culvert which was approxi-

mately 347 feet south of the crest of the hill. The Pontiac's skid marks continued 51 feet on the pavement gradually leaving the road on its right side, and on down the ditch line about 216 feet. The Chevrolet tire marks went 24 feet down the road, then left the roadway, went another 126 feet north and then got back on the road. At that point the Chevrolet turned over and went on for another 156 feet.

Trooper Fischbeck testified that in his opinion the two cars "collided where the tire marks begin". He stated if there had been a center line on the road none of the tire marks on the Pontiac would have been on the left (or wrong) side of the center line, and that the Pontiac must have been completely on its side of the road at the impact point.

The damage to the Burks Pontiac from the collision was on the left side, beginning at the left headlight, and extended along the left side. The damage to the Robison Chevrolet was at the left side, beginning about the left front door. There was damage to the front headlight which may have occurred when the car rolled over.

On this appeal appellant Burks makes four contentions of trial error. The first is that plaintiff did not make a submissible case of primary negligence against Burks because there was no evidence from which the jury could have found that Burks could have avoided the collision by swerving his automobile to the right.

■ The rule is that in determining the submissibility of a plaintiff's case, plaintiff is entitled to have the evidence reviewed from a standpoint favorable to plaintiff, giving him the benefit of any of defendant's evidence favorable to plaintiff, plus the benefit of all reasonable inferences from all the evidence, and defendant's evidence unfavorable to plaintiff is disregarded.

So viewed, as the two cars approached near the crest of the hill, Burks' car was partly on its wrong side of the 17-foot road and the Robison car was mostly on its proper side of the road with its left front wheel right about the center of the road. The pictures in evidence support an inference the two cars did not meet directly head-on but rather to some extent "sideswiped".

Byrd testified the impact occurred 40 feet south of the crest of the hill. Nelson West, the county engineer, testified that from a point 65 feet north of the hill crest a southbound driver has a clear view of the road for 368 feet ahead of him. Under this version of the evidence, when the Burks vehicle was 65 feet north of the hillcrest and thus was 105 feet (65 plus 40) from the point of impact of the vehicles he could see the approaching Chevrolet. Viewing the evidence most favorable to plaintiff, the Burks car was traveling 45 miles per hour which, according to the testimony, is 66 feet per second. Accordingly, after Burks could have seen the approaching Chevrolet he had approximately 1.6 seconds in which to turn before the impact occurred.

■ According to some testimony, the Robison Chevrolet was going 60 miles an hour which is 88 feet per second; hence, in 1.6 seconds it traveled 140 feet from the point where Burks could have seen it to the point of impact. Thus, the two automobiles, under this version of the evidence, were 245 feet apart when Burks first could have seen the approaching Chevrolet. There was testimony that the average reaction time involved is three-fourths of a second. As stated in Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 788, "The courts will take judicial notice that when a situation demanding some action arises some appreciable time is required for a motor driver, a motorman or an engineer to react to the appearance of danger to begin to avoid the situation. Unless a longer time affirmatively appears in the proof the courts recognize that such reaction time is three-quarters of a second."

Allowing three-fourths of a second for reaction time, Burks had 1.60 seconds less 0.75 seconds average reaction time in which

to endeavor to avoid impact between the vehicles. Mathematically, he had 0.85 of a second in which to avoid impact after allowing for average reaction time. In so saying, we have trepidations, for the particular circumstances presented—near dusk, a narrow blacktop road, no shoulders, a ditch on Burks' side of the road, and no marked middle line on the road make it logical that even more than average reaction time was required. See Stimeling v. Goodman, 202 Va. 111, 115 S.E.2d 923(2).

We have reached the conclusion that the stated facts do not present a submissible jury case on failure to keep a careful lookout. The jury in order to find Burks negligent by reason of failure to keep a careful lookout on the facts before it would have to engage in variable surmises and speculation as to what evasive action Burks could take in 0.85 of a second or less. When a single second is dissected into a fraction and there is no showing as to how far Burks must turn to his right to avoid impact of the vehicles in that flash of time, it leaves the question of Burks' negligence to conjecture and speculation.

To have a submissible case more is required than a showing of a purely speculative possibility that a collision might have been avoided if a careful lookout had been maintained. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495.

Having reached the conclusion just announced, it is unnecessary to examine other contentions of error presented by appellant. This case, if retried, will be subject to the new pattern instructions effective as of January 1, 1965.

It is the rule that the furtherance of justice requires a case should not be reversed without remanding unless the appellate court is convinced the facts are such that a recovery cannot be had. Reece v. Reed, Mo.Sup., 326 S.W.2d 67. Since there was evidence (if credible) that Burks was proceeding to some extent on the wrong side of the road the case should be remanded for a new trial.

The judgment is reversed and the cause is remanded.

All concur.