## Richmond

PERCY LEE HILL v. CURTIS H. THOMAS.

April 24, 1967.

Record No. 6395.

Present, All the Justices.

*Arthur G. Lambiotte (Daniel W. Wilkinson, Jr.; Ford, West and Wilkinson*, on brief), for the plaintiff in error.

*Roy B. Fox, Jr. (Hall and Fox*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Mrs. Curtis H. Thomas, the plaintiff, recovered a jury verdict in the sum of $8,500.00 against Percy Lee Hill, the defendant, for personal injuries she suffered when the vehicle in which she was a passenger was in collision with an automobile operated by the defendant. The trial court entered final judgment on the verdict, and the defendant was granted a writ of error.

The accident occurred at approximately 9:45 p. m. on October 27, 1963, at the intersection of Mercury Boulevard, U. S. Route 17, and Warwick Boulevard, U. S. Route 60, in the city of Newport News. The weather was clear; the streets were dry; and the intersection was plainly lighted. The speed limit was 35 m.p.h.

Mercury Boulevard runs generally east and west, and Warwick Boulevard runs generally north and south. On the easterly side of the intersection, there are four lanes for westbound traffic on Mercury Boulevard—one for left turns, one for right turns, and two for through traffic. On the westerly side of the intersection, there are three lanes of travel for westbound traffic on Mercury Boulevard, totaling 34.4 feet in width. For eastbound traffic on Mercury Boulevard, there are three lanes—one for left turns, one for right turns, and one for through traffic. The eastbound lanes are separated from the westbound lanes by grass plots at the approaches to the intersection.

Warwick Boulevard consists of four lanes at the intersection for northbound traffic and four for southbound. One lane is for left turns, one for right turns, and two for through traffic. Grass plots separate the northbound and southbound traffic lanes at the approaches to the intersection.

The intersection is a broad one, each intersecting street being more than 60 feet in width, plus the width of the grass plots.

On Mercury Boulevard east of the intersection, there is a bridge, elevated above the intersection on an 8 degree vertical curve, overpassing the C. & O. Railway tracks. Westbound traffic is not visible from the intersection until it reaches the crown of the bridge, located approximately 500 feet uphill from the intersection.

Traffic at the intersection is controlled by signal lights. Westbound traffic on Mercury Boulevard has the advantage over eastbound traffic of a ten-second delayed-green signal to permit vehicles to make left turns onto Warwick Boulevard.

According to the evidence presented by the plaintiff, the vehicle in which she was a passenger was being operated by Andrew J. Apperson in an easterly direction on Mercury Boulevard. When Apper-

son approached the intersection, the traffic signal was red; and he stopped his vehicle in the left turn lane. His was the first vehicle in the lane; and when the light turned green, he turned on his left turn signal. No traffic was then visible approaching from the east; and Apperson proceeded slowly into the intersection, turning gradually to the left.

After Apperson entered the intersection and "had gotten partially into [his] lefthand turn," the defendant's vehicle was observed approaching the intersection from the east on Mercury Boulevard, traveling downgrade from the overpass at "an excessive rate of speed" variously estimated to be "at least 45 . . . maybe 45, 40 . . . around 40 to 45 miles." Apperson, realizing that "there was a possibility [he] couldn't possibly make it," immediately brought his vehicle to a stop. The defendant's vehicle proceeded, at an undiminished speed and without deviating from its path, and collided with the Apperson automobile.

The vehicles came to rest "directly in the center of Warwick Boulevard, right in the middle of the intersection." The Apperson automobile was damaged on its right front, and the defendant's vehicle on its left front. There were eight feet of skid marks leading to the rear wheels of defendant's vehicle.

According to the evidence presented by the defendant, he was proceeding slowly into the intersection when Apperson turned in front of him so suddenly that he was unable to avoid the collision.

The defendant contends that "the physical facts found at the scene of the accident show that plaintiff's evidence is absolutely incredible and not worthy of belief in any respect." The physical facts, the defendant argues, corroborate his version of the accident and show that he "was not guilty of negligence as a matter of law." The trial court erred, therefore, the defendant says, in submitting the case to the jury and in refusing to set aside the verdict.

The defendant sets out in his brief the physical facts upon which he relies, stating as follows:

". . . [T]he width of the three westbound lanes of Mercury Boulevard are 34.4 feet in width. [The investigating police officer] found the two vehicles at right angles to one another, and together, ten paces north of the island dividing east and westbound Mercury Boulevard on the easterly side of the intersection. . . . [T]he damage to the [defendant's] vehicle was located to the left front corner and the damage to the Apperson vehicle was to the right front

corner. . . . [T]he [defendant's] vehicle laid down 8 feet of skid marks."

It was undenied that the three lanes provided for westbound traffic on Mercury Boulevard west of the intersection totaled 34.4 feet in width. But the defendant does not point out, and we have been unable to perceive, what bearing that fact has upon the question of the credibility of the plaintiff's evidence.

It is not a fact that the two vehicles were found at a right angle to one another by the investigating police officer. He testified merely that the defendant's vehicle came to rest "headed west, the Apperson vehicle . . . headed practically north, not a true north, of course." Such testimony was insufficient to establish at what angle the vehicles were found. And, while the officer stated that the two vehicles were "still against each other," Diamond Tripolites, an eyewitness upon whom the defendant relied heavily, stated that there was "about two feet distance between both vehicles."

It is true that the police officer stated that he had fixed the point of impact ten paces north of "the island on the east side of Warwick Boulevard dividing the east and westbound traffic of Mercury Boulevard." But the officer could only have used the word "north" in a general sense because, according to a plat introduced in evidence, a point ten paces due north of the island from which the measurement was made would have indicated that the impact took place not in the intersection, but east thereof, in one of the westbound lanes of Mercury Boulevard. No one contended that the accident occurred there. The real fact is that the point of impact was never fixed with any degree of certainty.

On the issue of the location of damage to the two vehicles, the evidence was unconflicting and tended to establish the plaintiff's version of how the accident occurred just as much as it did the defendant's.

The last physical fact upon which the defendant relies is the only one lending any substance to his position. There were only eight feet of skid marks leading to the rear wheels of his vehicle, a fact, standing alone, from which it might be inferred that the vehicle was being operated at a reasonable speed before the accident. But the defendant himself testified that before he "mashed on hard trying to stop," at which time he claimed the skid marks were made, he had applied his brakes "to slow down, but didn't stop." The record does not disclose the severity of the impact between the two vehicles or the

extent to which they were damaged. Therefore, no reasonably accurate inference can be drawn from the length of the skid marks as to the speed of the defendant's vehicle before the brakes were first applied.

In *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 323, 130 S. E. 2d 462, Mr. Justice I'Anson, writing for the court, stated:

"It is true that physical facts are sometimes more convincing than oral testimony (*Early* v. *Mathena, Adm'r*, 203 Va. 330, 335, 124 S. E. 2d 183, 187) but when physical facts are relied upon to overcome oral testimony they must be established by evidence so clearly preponderating that the existence of such facts is unmistakable. . . ."

Here, the physical facts were not established "by evidence so clearly preponderating that the existence of such facts is unmistakable," as required by the rule set forth in the *Weddle* case. The physical facts relied upon by the defendant either had no bearing upon the issue before us, were dependent upon the fallible memory and testimony of witnesses, were subject to more than one interpretation, or just did not exist. The so-called physical facts fail, consequently, to serve the defendant's purpose of showing that the plaintiff's evidence was incredible and that he was free from negligence, as a matter of law.

The trial court did not err, therefore, in submitting the case to the jury. The plaintiff, being a mere passenger in Apperson's vehicle, was not barred from recovery against the defendant because of any negligence on her host's part. All she had to show to make out her case against the defendant was that he was guilty of negligence which was a proximate cause of the collision. *Hobbs* v. *Thorns*, 195 Va. 639, 644, 79 S. E. 2d 854.

The record discloses two diametrically opposed versions of how the accident occurred. According to the plaintiff's version, the defendant entered the intersection at an unreasonable speed, neglected to keep a proper lookout, and failed to use due care to avoid the collision. Under the defendant's version, the accident was caused solely by the act of Apperson in turning suddenly in front of the defendant's vehicle. Neither version was incredible. Either was sufficient, if accepted, to support a verdict for its proponent. Under these circumstances, it was the province of the jury to decide who and

what was worthy of belief and which version should be accepted, *Adams* v. *Allen*, 202 Va. 941, 946, 121 S. E. 2d 364.

The trial court properly permitted the jury to function in its traditional role, observant of the settled rule that negligence and proximate cause are, generally, questions for decision by the jury. The jury accepted the version of the accident supplied by the plaintiff. The jury's verdict was supported by credible evidence, and the trial court did not err, therefore, in refusing to set it aside. The judgment appealed from will, accordingly, be

*Affirmed.*