JAMES C. STONE v. WALTER D. MITCHELL and SHERMAN H. WALKER, Trading as TRIANGLE DAIRIES, and JAMES LUTHER MANN

No. 6915SC305

(Filed 23 July 1969)

1. **Automobiles § 23— duty of vehicle operator to maintain adequate brakes — G.S. 20-124**

   G.S. 20-124 does not constitute the operator of a motor vehicle an insurer of the adequacy of the brakes of the vehicle, but the statute requires that the operator act with care and diligence to see that his brakes meet the standards prescribed by statute, without making the operator liable for injuries caused by some latent brake defect unknown to him and not reasonably discoverable upon proper inspection.

2. **Automobiles §§ 68, 90— negligence in failing to maintain adequate brakes — peremptory instruction — jury question**

   In this action for personal injuries resulting from an intersection accident which occurred when both the foot and hand brakes on defendant's milk truck failed, the trial court erred in giving the jury peremptory instructions to the effect that defendant was negligent in operating the truck without adequate brakes as required by G.S. 20-124 where defendant's evidence tends to show that all the brakes on the milk truck were periodically adjusted and repaired, that the last such adjustment occurred approximately two months before the accident, that the foot brake had worked properly since that time and during more than 100 milk deliveries on the day of the accident, and there is no evidence that the emergency brake had been used or attempted to be used since the last adjustment, the question of whether defendant was negligent in failing to maintain proper brakes being for the jury.

Appeal by defendants from *Clark, J.*, 27 January 1969 Civil Session, Superior Court of Orange.

Action to recover for personal injuries sustained by plaintiff when the automobile he was driving was in a collision with a milk truck owned by Triangle Dairies and driven by James Luther Mann.

The collision occurred at about 11 or 11:30 a.m. on 31 December 1966 just north of the then town limits of Chapel Hill. Neither vehicle had any occupant other than the driver. Plaintiff was traveling in a northerly direction on Highway 86, which is commonly known as Airport Road. Just north of the then town limits of Chapel Hill, Airport Road is intersected on the west side by Umstead Drive, forming a "T" intersection. Umstead Drive is on a down grade as it runs east and intersects with Airport Road, and directly across from the intersection on the east side of Airport Road, there is a 10 to 12 foot drop-off.

Plaintiff testified that he remembered nothing from the time he turned onto Airport Road until he awoke in the x-ray room at the hospital.

Mr. Hines, the State Highway Patrolman, testified that he investigated the collision; that the point of impact was in the right lane of traffic on Airport Road; that there were 30 feet of skid marks leading from the plaintiff's car to the point of impact; that defendant Mann told him that he was driving the milk truck, and as he approached the intersection of Umstead Drive with Airport Road he began to apply his brakes but the truck did not slow down and traveled on into Airport Road where it collided with a Pontiac automobile; that he had had trouble with his brakes one other time earlier that month, had reported it, and they had been fixed; that he, the witness, checked the brakes on the truck and the brake pedal lacked about half an inch going to the floor; that he did not check the emergency brake on the truck.

Defendant Mann testified in substance as follows: He was operating a GMC milk truck owned by Triangle Dairies traveling east on Umstead Drive. As he approached the intersection he was traveling at a speed of approximately 20 to 25 miles per hour. "I was coming down Umstead Road going into Airport Road and I hit my brakes and I didn't have any, I tried gearing it down and I got it into third gear and I tried to put it in second gear and it didn't slow it down none, and I'm pretty sure I pulled my emergency brakes and that didn't do no good and so I was going in, I was going to try to make the turn, because there's a big cliff on the other side, and I run out in the road and run into Mr. Stone." He had started on his milk route that morning about 6 o'clock, was just about finished with his deliveries, and had had no trouble with the brakes during

the morning. He had made about 100 stops. He had had trouble with the brakes about a month and a half prior to this, had reported that the brakes were not working properly, and the trouble was fixed. There was a store named Marlowe's Store on Airport Road across from a trailer court, but he had not been in that store on this day and had only been there on one occasion since he had been employed by Triangle Dairies and that was a while before this when he stopped and got a sandwich and a drink. He didn't remember that he had ever used the emergency brakes on the truck but he was "pretty sure they didn't work" because he was "just about positive I pulled them when I put on brakes and it didn't stop."

On cross-examination he testified in substance as follows: That it was his best recollection that as he was coming down Umstead Drive he pulled the emergency brake and it didn't slow the truck down. He believed that he had tried the emergency brake at least two or three times since he had been driving the truck and it had not worked. He had never reported that to his company because he "never did use them that much." There was a stop sign facing him on Umstead Drive but he did not stop and did not blow his horn. He saw the plaintiff's car just before he hit it. The left front of his truck struck the left front of plaintiff's car.

On redirect examination he testified that after the collision the Highway Patrolman got in the truck and "checked the brakes and it didn't have any."

Defendant Walter D. Mitchell testified that he is a partner in and manager of Triangle Dairies; that Miller Truck & Sales takes care of the maintenance and service of the company's trucks and is located just across the street from the company; that the drivers are instructed to take their trucks there without having to ask anybody and the service manager will take care of whatever is wrong with it; that a separate file of repairs and service bills is maintained on each truck; that his file disclosed the following bills with respect to brake work on the truck driven by Mann: 4-25-66, "pull front wheel, check lining, reline front brakes and adjust all brakes"; 6-3-66, "adjust all brakes"; 8-1-66 "adjust brakes"; 8-66 (not dated), "adjust brakes"; 8-31-66, "adjust brakes, repair hand brake"; 9-20-66, "adjust brakes, replace rear shoes, replace rear drum"; 11-3-66, "check brake adjustment and fluid, adjust all brakes and bleed".

The court peremptorily instructed the jury on the first issue as to the negligence of defendants. The jury answered the issue in

favor of the plaintiff and awarded damages in the amount of $30,000. Defendants appealed.

*Bryant, Lipton, Bryant & Battle by F. Gordon Battle for plaintiff appellee.*

*Newsom, Graham, Strayhorn & Hedrick by Ralph N. Strayhorn and E. C. Bryson, Jr., for defendant appellants.*

MORRIS, J.

Defendants assign as error the following portion of the court's charge:

"Members of the jury, the Court feels that under all the evidence in this case, only one inference may be drawn from this evidence and from the facts admitted, including of course, the testimony of the defendant Mann, the agent of the defendants Mitchell and Walker; it is the law of this State that an operator of a motor vehicle must stop where a stop sign is erected by competent authority as provided by the statute, and yield the right of way to vehicles on a dominant or through highway, and failure to do so is evidence of negligence. The evidence in this case tends to show without question that the GMC delivery truck operated by the defendant Mann did not stop in obedience to the stop sign on Umstead Drive, but that he continued on through into the intersection and struck the vehicle operated by the plaintiff. However, the evidence further tends to show that he had a brake failure of his foot brakes and further tends to show from his testimony that he didn't have any hand or emergency brake. Now, we have a statute, G.S. 20-124, which requires that a motor vehicle have two separate means of applying the brakes and that these must be so constructed that failure of any one of the operating mechanism shall not leave the motor vehicle without brakes; so members of the jury, the Court feels, as I've said, that there is only one inference to be drawn from the evidence in this particular case; that in view of all of the testimony and particularly the testimony of the defendant Mann, agent of the defendants Mitchell and Walker, that the defendant Mann was negligent on the occasion in question and his negligence of course is imputed to the other defendants, the operators of the Triangle Dairies. I do instruct you that if you believe the evidence in this case and find by the greater weight thereof the facts to be as the evidence tends to show, bearing in mind that the burden is upon the plaintiff, then

I instruct you that it would be your duty to find that the defendants in this case were negligent; and if you further find by the greater weight of the evidence that such negligence of the defendants was a proximate cause of the collision between the vehicles and the injuries to the plaintiff, then it would be your duty to answer this first issue yes; if you fail to so find, it would be your duty to answer this first issue no."

Defendants contend that the evidence in this case is not such that the only inference to be drawn therefrom is that defendants were guilty of negligence, but on the contrary that diverse inferences may be drawn therefrom — some favorable to plaintiff and others favorable to defendants, making it a jury question.

Although the failure to maintain proper brakes would warrant a finding of negligence, we are of the opinion that whether defendants' evidence was sufficient to overcome the showing made by plaintiff is a question for the jury.

[1] In *Stephens v. Oil Co.*, 259 N.C. 456, 131 S.E. 2d 39, a case strikingly similar as to facts, defendant driver was going downhill driving an oil tanker. It appeared that the collision occurred on Saturday and the brakes had been overhauled and relined the preceding Thursday. They had worked properly early Saturday morning. Defendant driver, approaching a line of cars, applied his brakes "and didn't have any". He pulled to his left thinking the extra width of the highway in the western lane would enable him to avoid a collision, but he collided with the back fender of plaintiff's car. He had attempted to check his speed by throwing the transmission in low gear, but was unable to do so. The Supreme Court said the court properly overruled defendant's motion for nonsuit for that plaintiff's evidence was sufficient to permit a jury to find defendants violated three statutes, including G.S. 20-124, and if the negligence resulting from failure to comply with any of these statutes proximately causes injury, liability results, the question of proximate cause being for the jury. Defendants there, as here, assigned as error portions of the charge relating to the violation of the safety statutes and to the failure of the court to instruct the jury with respect to their defense — unavoidable accident. Rodman, J., speaking for the Court, said:

"Plaintiff has shown the violation of a statute, G.S. 20-124, mandatory in its language. Notwithstanding this mandatory language, the statute must be given a reasonable interpretation to promote its intended purpose. The Legislature did not intend to make operators of motor vehicles insurers of the ade-

quacy of their brakes. The operator must act with care and diligence to see that his brakes meet the standard prescribed by statute; but if because of some latent defect, unknown to the operator and not reasonably discoverable upon proper inspection, he is not able to control the movement of his car, he is not negligent, and for that reason not liable for injuries directly resulting from such loss of control. The injuries result from an unavoidable accident. *Smith v. Pate,* 246 N.C. 63, 97 S.E. 2d 457; *Pike v. Seymour,* 222 N.C. 42, 21 S.E. 2d 884.

The true rule is, we think, clearly and accurately stated in *Wilson v. Shumate,* 296 S.W. 2d 72. There plaintiff was driving defendant's automobile at his request. She was injured because of the failure of the brakes on the car. The Court said: 'Plaintiff's testimony, heretofore noted, that the brake pedal went clear to the floor as she "again and again" used it in an attempt to stop the automobile, that it had failed to slow or stop but ran into the embankment, was sufficient evidence from which a jury reasonably could find that defendant's automobile was not equipped with two sets of brakes in good working order during the time plaintiff was driving and that the defective foot brake contributed to cause the collision. Defendant's failure to observe the duty or standard of care prescribed by the statute constituted negligence. In recognition, however, of the principle that the statutes must be reasonably construed and applied, defendant could offer proof of legal excuse or avoidance of his failure to have observed the duty created by the statute, i.e., proof that an occurrence wholly without his fault made compliance with the statute impossible at the moment complained of and which proper care on his part would not have avoided. Upon adducing the substantial evidence tending to so prove, it was then a jury question as to whether the defendant was negligent for failure to have provided a foot brake in good working order.' *Lochmoeller v. Kiel,* 137 S.W. 2d 625; *Merry v. Knudsen Creamery Co.,* 211 P. 2d 905; *Purser v. Thompson,* 219 S.W. 2d 211; *Eddy v. McAninch,* 347 P 2d 499. Similar conclusions have been announced by the courts with respect to other safety statutes. *Leek v. Dillard,* 304 S.W. 2d 60; *Scott v. Mackey,* 324 P. 2d 703; *Clark v. Hawkins,* 321 P 2d 648; *Bedget v. Lewin,* 118 S.E. 2d 650; *Frager v. Tomlinson,* 57 N.W. 2d 618."

[2]  Here defendants have shown periodic brake adjustment and repair, the last such adjustment to all brakes occurring on 3 No-

vember. The evidence was that the foot brakes had worked properly since that time and that for the more than 100 deliveries made by the driver that morning no difficulty had been experienced. There is no evidence that the emergency brake had been used or attempted to be used since 3 November. The evidence was that the driver was "pretty sure" he pulled the emergency brake when the foot brake failed and after he had attempted to gear the truck down. The evidence is that neither the patrolman nor anyone else checked the emergency brake after the accident.

We think the defendants' evidence, if accepted by the jury, was sufficient to negative the allegation that the truck was being operated without adequate brakes.

Defendants' contention as to error committed in the admission of evidence is not discussed since, for error in the charge, there must be a new trial and the particular error, if any, is not likely to occur upon another trial.

New trial.

CAMPBELL and BROCK, JJ., concur.